Roger Leon LONG, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 28S00–9907–CR–388.

Supreme Court of Indiana.

March 9, 2001.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Roger Long, was convicted of murder;[1] conspiracy to commit murder, a class A felony;[2] criminal deviate conduct, a class A felony;[3] and criminal confinement, a class B felo-

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–41–5–2; Ind.Code § 35–42–1–1.

3. Ind.Code § 35–42–4–2(b)(1).

ny[4] for a 1995 criminal episode in Linton, Indiana, that resulted in the death of Pamela Foddrill.[5] Long was sentenced to life imprisonment without parole for the murder conviction. The trial court also imposed consecutive sentences of fifty years for conspiracy to commit murder, fifty years for criminal deviate conduct, and twenty years for criminal confinement.

In this direct appeal, Long alleges various errors, which we have rearranged as follows: (1) presence of a witness in the courtroom during trial; (2) insufficient evidence for conspiracy to commit murder; (3) insufficient evidence for criminal deviate conduct as a class A felony; (4) insufficient evidence for criminal confinement as a class B felony; (5) criminal deviate conduct sentence as a violation of federal Double Jeopardy Clause; (6) criminal confinement conviction as a violation of Indiana Double Jeopardy Clause; and (7) use of an improper aggravating circumstance in sentencing for life without parole.

### 1. Presence of Testifying FBI Agent in Courtroom

■ Long contends that the trial court erroneously allowed FBI Agent Dunn, a testifying witness, to remain in the courtroom throughout the trial. The defense requested, and the trial court ordered, a separation of witnesses pursuant to Indiana Evidence Rule 615, which provides:

At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclu-

sion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

The trial court permitted the prosecutor to retain at counsel table both Indiana State Police Trooper Daniel Conley as an officer of the State (under clause (2)) and FBI Agent Gary Dunn as a person essential to the presentation of the State's case (pursuant to clause (3)). Long challenges the presence of Agent Dunn but not of Trooper Conley. Record at 1376–80.

■ The basic premise of Rule 615 is that, upon request of any party, witnesses should be insulated from the testimony of other witnesses. To serve this general objective, the rule's exceptions should be narrowly construed and cautiously granted. A party seeking to exempt a witness from exclusion as "essential to the presentation of the party's cause" under clause (3) must convince the trial court that the "witness has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney would not effectively function without the presence and aid of the witness." *Hernandez v. State,* 716 N.E.2d 948, 950 (Ind.1999) (citations omitted). An exclusion under clause (3) would thus be inappropriate in cases where a person excluded under clauses (1) or (2) can provide the expertise and knowledge adequate to assist counsel. Likewise, permitting a party to retain more than one witness in the courtroom under clause (3) to assist during trial would be especially questionable.[6] The determination of

4. Ind.Code § 35–42–3–3(2).

5. Today, we also decide the cases of Long's companions, John Redman and Jerry Russell, who were each separately tried for their roles in these crimes. *Redman v. State,* 743 N.E.2d 263 (Ind.2001); *Russell v. State,* 743 N.E.2d 269 (Ind.2001).

6. In *Vinson v. State,* 735 N.E.2d 828, 831 (Ind.Ct.App.2000), the Court of Appeals ap-

proved the retention of two police officer witnesses at counsel's table during the trial notwithstanding a separation of witnesses order. Construing the Rule 615 exceptions generously instead of narrowly, the court stated that "if a witness falls within one of the exemptions enumerated under Indiana Evidence Rule 615, that witness shall be allowed to remain in the courtroom." *Id.* Although we

whether a witness qualifies for the exemption found in clause (3) is within the trial court's discretion and is subject to review for an abuse of that discretion. *Fourthman v. State,* 658 N.E.2d 88, 90 (Ind.Ct. App.1995).

To support his contention that the trial court abused its discretion, Long, while acknowledging various reasons the prosecutor gave the trial court, argues that Agent Dunn's presence "may have been a convenience, but fell far short of being 'essential.' " Br. of Defendant–Appellant at 17. In requesting Agent Dunn's exception as "essential" under Rule 615, the State explained that Trooper Conley and Agent Dunn had divided many of the responsibilities of the investigation, often working separately, particularly when interviewing witnesses in Ohio and Illinois. As noted by Long, "forty-five non-police, non-expert witnesses testified for the State," thirteen search warrants were issued, and sixty-six exhibits were offered into evidence by the State. Br. of Defendant–Appellant at 16. In preparation for this seven-day trial, the police conducted over 500 witness interviews and executed thirty searches during three to four years of police work covering leads in Ohio, Illinois, and Indiana.

Notwithstanding the important purpose of Rule 615 to minimize prospective witnesses from exposure to the testimony of other witnesses and our preference that the rule's exceptions be narrowly construed and cautiously granted, we decline to find that the trial court abused its discretion in finding Agent Dunn within the Rule 615 exception for persons essential to the presentation of the prosecutor's case.

## 2. Conspiracy to Commit Murder

■ Long contends that there was insufficient evidence to convict him of conspiracy to commit murder. Specifically, he contends that none of the alleged overt acts were committed in the course of the conspiracy.

The State charged that Long, with the intent to commit murder, did agree with others to commit the murder and that Long or one of his accomplices "did perform one or more of the following overt acts in furtherance of the agreement, to-wit: abduct, confine, rape or dispose of the body of Pamela Foddrill." Record at 376. The statute defining the crime of conspiracy requires the State to "allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." Ind.Code § 35–41–5–2(b).

Long argues that the only evidence relating to an agreement to kill specified that the agreement occurred on the day of the murder, after the confinement and rape were accomplished, and about twelve days after the abduction. From this, he contends that the abduction, confinement, and rape were not "in furtherance of a conspiracy that did not yet exist." Br. of Defendant–Appellant at 21. He further asserts that the remaining charged overt act, disposal of the body, did not occur "during the life of the conspiracy" and therefore does not satisfy the statutory definition of an overt act in furtherance of the agreement. Br. of Defendant–Appellant at 23.

Because the overt acts were charged in the disjunctive, only one overt act need be proven to establish the crime of conspiracy. The evidence indicates that, after the murder, Long and his accomplices disposed of the victim's body by driving to a secluded wooded area and dumping it. To support his contention that the post-murder disposal is not a valid overt act to establish conspiracy, Long quotes language from *Grunewald v. United States,* 353 U.S. 391, 401–02, 77 S.Ct. 963, 972, 1 L.Ed.2d 931, 942 (1957): "acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among

declined to grant transfer in *Vinson,* we disap-

prove of its treatment of the Rule 615 issue.

the conspirators." In contrast to the Indiana conspiracy statute's requirement of an overt act *in furtherance* of the agreement, the *Grunewald* Court was interpreting a federal conspiracy statute that specifies that "one or more of such persons do any act *to effect the object* of the conspiracy." *Id.* at 393 n. 1, 77 S.Ct. at 968 n. 1, 1 L.Ed.2d at 937 n. 1 (emphasis added). The *Grunewald* reasoning thus does not apply to the Indiana statute. While disposing of a victim's body may not have satisfied the federal statute's requirements, it is an act "in furtherance" of the agreement to murder and thus may constitute a valid overt act under the Indiana conspiracy statute.

Finding that one of the charged overt acts, disposal of the victim's body, was proven by the evidence, we reject Long's claim of insufficient evidence to prove conspiracy.

### 3. Criminal Deviate Conduct as a Class A Felony

■ Long contends that his conviction for criminal deviate conduct should be reduced from a class A felony to a class B felony because of the absence of evidence that he used or threatened to use deadly force.

The relevant portions of the statute defining the offense of criminal deviate conduct provide: "A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when the other person is compelled by force or imminent threat of force . . . commits criminal deviate conduct, a Class B felony. An offense . . . is a Class A felony if it is committed by using or threatening the use of *deadly* force. . . ." Ind.Code § 35–42–4–2 (emphasis added). The State alleged that Long committed criminal deviate conduct by "using or threatening the use of deadly force, to-wit: by holding her down and threatening to kill her." Record at 378.

7. We do not determine the sentence to be imposed because of our resolution of the de-

Long does not dispute that the evidence was sufficient to establish that the victim was compelled by force or imminent threat of force to perform or submit to deviate sexual conduct, thus supporting the conviction as a class B felony. He argues, rather, that there was no evidence that the offense of criminal deviate conduct was committed by using or threatening to use *deadly* force, as required for conviction as a class A felony. To justify the enhanced penal consequences that result from the class A felony designation, the force used must be of such a nature that it meets the statutory definition of "deadly force"—that which "creates a substantial risk of serious bodily injury." Ind.Code § 35–41–1–7. While the victim's submission was clearly compelled by force, thus justifying class B felony treatment, we find no evidence from which it can be reasonably inferred that the force used for the deviate conduct was "deadly." We conclude that there was insufficient evidence to establish that Long employed deadly force when he compelled the victim to perform or submit to deviate sexual conduct and therefore grant this request to modify his conviction for criminal deviate conduct from a class A felony to a class B felony.[7]

### 4. Criminal Confinement as a Class B Felony

■ Long also contends that his conviction for criminal confinement should be reduced from a class B felony to a class D felony. The State charged that the defendant committed criminal confinement by knowingly or intentionally removing the victim by force from one place to another, which resulted in serious bodily injury, namely fractured bones. The criminal confinement statute provides:

A person who knowingly or intentionally:

(1) confines another person without the other person's consent; or

fendant's double jeopardy claim in part 5, below.

(2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement, a Class D felony. However, the offense is a Class C felony if the other person is less than fourteen (14) years of age and is not the person's child, and a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person.

Ind.Code § 35–42–3–3.

The defendant argues that, while there was evidence that the victim suffered fractured bones, there was no evidence that these injuries resulted from her being forcefully removed from one place to another and that, for this reason, there was insufficient evidence to prove the serious bodily injury element of criminal confinement as a class B felony. The State argues that "the jury could have inferred that Foddrill's injuries to her nose and eye socket were caused during her movement from one place to another....," Br. of Appellee at 13, but does not identify any evidence tending to prove this assertion. We find that the evidence was insufficient to establish that the conduct constituting the charged offense of criminal confinement resulted in serious bodily injury, as required to constitute a class B felony.

We grant the defendant's request to modify his sentence for criminal confinement. Because the facts of this case do not qualify for class B felony treatment, we find that the criminal confinement conviction should be imposed as a class D felony. Rather than remand this matter to the trial court for the purpose of determining the appropriate sentence for this count as a class D felony, we will make the determination, "mindful of the penal consequences that the trial court found appropriate." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind.1999). Finding four aggravating circumstances proven and that they outweighed three mitigating circumstances found, the trial court imposed the maximum enhancement of the offense as a class B felony. We likewise impose the maximum enhancement of the offense, but as a class D felony, sentencing the defendant to three years on this count, to run consecutively with his other sentences in this case.

## 5. Criminal Deviate Conduct Sentence and Double Jeopardy

The defendant contends that his sentence for criminal deviate conduct violates the Double Jeopardy Clause of the United States Constitution because he was also sentenced to life without parole based in part on the finding that he intentionally killed Pamela Foddrill while committing or attempting to commit criminal deviate conduct. The State does not dispute this claim and suggests that the convictions for murder and criminal deviate conduct be merged.[8]

Accordingly, although the defendant remains convicted for both offenses, his sentence for criminal deviate conduct is vacated by reason of the existence of the greater life without parole sentence for the murder.

## 6. Indiana Double Jeopardy

■ The defendant contends that the Double Jeopardy Clause of the Indiana Constitution[9] requires that we vacate his conviction for criminal confinement.[10] He argues that there is a reasonable possibili-

---

**8.** The State does not argue for any distinction on the grounds that the defendant was convicted for one count of criminal deviate conduct but that the trial court, in imposing the life without parole sentence on the murder count, found that the defendant committed "repeated acts of deviate conduct." Record at 864.

**9.** IND. CONST. art. 1, § 14.

**10.** In the alternative, he argues that the Indiana Double Jeopardy Clause requires that his criminal confinement conviction be reduced from a class B felony to a class D felony. We do not separately address this claim because we have already determined that Long's conviction for criminal confinement must be modified from a class B to a class D felony.

ty that the jury used the evidence of the victim's abduction in establishing both the offense of conspiracy to commit murder and that of criminal confinement.

■ To establish that two challenged offenses constitute the same offense under the actual evidence test and thus violate the Indiana Double Jeopardy Clause, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Richardson*, 717 N.E.2d at 53.

The essential elements of the offense of conspiracy to commit murder are: (1) the defendant (2) agreed with one or more other persons to commit the crime of murder (3) with the intent to commit murder and (4) the defendant or one of the persons to the agreement performed an overt act in furtherance of the agreement. Ind. Code § 35–41–5–2. The essential elements of the charged offense of criminal confinement in this case are: (1) the defendant (2) knowingly or intentionally (3) removed the victim by force from one place to another. Ind.Code § 35–42–3–3.

The charging information identified four alternative overt acts: abduction, confinement, rape, and disposal of the body. He argues that there is a "reasonable possibility that the evidentiary facts used by the jury to establish the overt acts of 'abduction' or 'confinement' for Conspiracy to Commit Murder may have also been used to establish the essential elements of removal by force for the Criminal Confinement." Br. of Defendant–Appellant at 28. If the jury relied only on the evidence showing the defendant's knowing or intentional removal of the victim from one place to another to establish both the confinement charge and the conspiracy charge based on abduction or confinement as the overt act, the convictions for both conspiracy and criminal confinement would have been based on the same evidence and thus would violate the Indiana Double Jeopardy

Clause. The issue before us, however, is not merely whether it is *possible* that this occurred, but rather whether the likelihood of this occurrence is sufficiently substantial for us to conclude that it is *reasonably possible* that this occurred.

In *Griffin v. State*, 717 N.E.2d 73 (Ind. 1999), we were confronted with a similar issue. The jury was instructed that the charge of conspiracy to commit robbery could be established by various alleged overt acts, one of which was the completed robbery itself. Noting the extensive evidence of the other alleged overt acts, we rejected the claim of double jeopardy and emphasized: "To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote." *Id.* at 89.

In the present case, the evidence indicated that Long and others forcibly abducted the victim, a mentally retarded woman, and took her to a residential attic where they confined her for several days, possibly more than a week, during which they compelled her to engage in multiple acts of oral, anal, and vaginal intercourse. After killing her, her assailants moved her body to a nearby shed, where it remained for several days before they removed it to a rural wooded site in Illinois.

In argument to the jury, the State did not restrict itself to the abduction as the overt act for conspiracy, although these elements received emphasis. The prosecutor argued "there was at least one or more overt act, at least one act taken toward the commission of that crime and we have alleged abduct, confine, rape or dispose. Only one of those has to be proven. We believe we've proved all four." Record at 3107.

The trial court's final Instruction No. 8, in part, advised the jury that the State "must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." *Id.* at 701, 3140. The

court's Instruction No. 9, enumerating the elements of the offense of conspiracy to commit murder as charged in this case, included its advisement that, to convict Long of conspiracy to commit murder, the State must have proved that Long agreed with another person to commit murder, that he did so with the intent to commit murder, and that Long or one of the other persons to the agreement performed one or more overt acts in furtherance of the agreement by either abducting, confining, raping, or disposing of the body of Pamela Foddrill. *Id.* at 703, 3140–41. As to the charge of criminal confinement, the court's Instruction No. 7 authorized conviction upon finding proof beyond a reasonable doubt that Long knowingly or intentionally removed the victim by force from one place to another. *Id.* at 700, 3139.

In view of the extensive evidence of the protracted criminal episode and the court's instructions which clearly authorized any one of several bases for finding the overt act element, we find no sufficiently substantial likelihood that the jury relied on the evidence of the abduction by removal to establish the overt act element of the conspiracy charge. The possibility is remote and speculative and therefore not reasonable. Because there is no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both criminal confinement and conspiracy to commit murder, we reject Long's claim that his convictions on these counts violated the Indiana Double Jeopardy Clause.

### 7. "Torture" as an Aggravating Circumstance

■ Long contends that his sentence of life imprisonment without parole was based in part upon an aggravating circumstance that did not exist at the time the crime was committed. The State concedes this point.

■ The State charged, and the trial court found proven beyond a reasonable doubt the existence of three aggravating circumstances: (1) Long was on probation for theft, a felony;[11] (2) Long intentionally killed the victim while committing or attempting to commit criminal deviate conduct;[12] and (3) Long tortured the victim.[13] The criminal episode culminating in the murder of Pamela Foddrill occurred between August 18, 1995 and December 2, 1995. It was not until 1996 that the Indiana General Assembly added "that the defendant burned, mutilated, or tortured the victim while the victim was alive" to the list of enumerated statutory aggravating circumstances. P.L. 228–1996. The legislation specifically declares that this aggravating circumstance may only be relied upon for crimes committed after June 30, 1996. *Id.* Capital sentences and sentences of life imprisonment without parole are governed by the same statute, imposed under the same standards, and are subject to the same requirements. *Ajabu v. State,* 693 N.E.2d 921, 936 (Ind.1998).

■ Upon finding a substantial irregularity in a trial court decision to impose the death penalty or life without parole, we have various options. Among these are: 1) remand to the trial court for a clarification or new sentencing determination, 2) affirm the sentence based upon a finding of harmless error, or 3) independently reweigh the proper aggravating and mitigating circumstances at the appellate level. *Lambert v. State,* 675 N.E.2d 1060, 1065 (Ind.1996); *Bivins v. State,* 642 N.E.2d 928, 957 (Ind.1994). This Court has the constitutional authority to review and revise criminal sentences. Ind. Const. art. 7, § 4. As in *Bivins,* we find the sentence imposed by the trial court to be appropriate by reason of both the harmless error doctrine and independent appellate reweighing.

In addition to the three aggravating circumstances, the trial court found three

11. Ind.Code § 35–50–2–9(b)(9)(C).

12. Ind.Code § 35–50–2–9(b)(1)(D).

13. Ind.Code Ann. § 35–50–2–9(b)(11) (Michie 1998).

mitigating circumstances: (1) Long is functionally illiterate and has a limited education, having dropped out of school in the eighth grade; (2) Long is mentally deficient, having a limited intellectual functioning, but is not mentally retarded; and (3) Long has not had significant family support throughout his life. Record at 866. Long does not contend that the evidence established other mitigating circumstances that should also be considered.

In its sentencing order, the trial court explained the following specific facts and reasons that supported the aggravating circumstance that Long intentionally killed the victim while committing or attempting to commit criminal deviate conduct:

> The evidence is replete with violent sexual acts, including repeated acts of deviate conduct, committed upon the unwilling and resisting Pamela. When it was obvious to the perpetrators that the victim could withstand no more she was murdered. The repeated striking of blows to her head by a baseball bat and the repeated stabbings with a knife leave no doubt that the death was intended. And even after her death the body of the victim was used in an effort to satisfy sexual lust.

Record at 864. The trial court further explained:

> Not only did he [Long] act in total disregard for human life but also it is clear that he intended to kill. He intentionally participated in the planning and the commission of the kidnapping, the confinement, the repeated rapes and acts of sexual abuse, the inhumane, degrading torture, and the brutal death. He was actively involved and physically present during the entire sequence of criminal activity that culminated in the intentional killing of Pamela Foddrill, and the concealment of her physical remains.

*Id.* We are convinced that, absent consideration of the torture aggravator in the sentencing decision, the trial court would nevertheless have imposed the sentence of life imprisonment without parole.

Furthermore, upon independent appellate reweighing of the aggravating and mitigating circumstances found by the trial court, but excluding the torture aggravator, and with due regard for the recommendation of the jury, we find that the mitigating circumstances are substantially outweighed by the aggravating circumstances. Long's limited education, his limited intellectual functioning, and his lack of significant family support throughout his life, are mitigating circumstances that appeal to our compassion. In our judgment, however, they do not supply sufficient explanation for Long's conduct or otherwise offset the gravity of the aggravating circumstances, particularly Long's conduct in intentionally killing while committing or attempting to commit criminal deviate conduct.

Finding that excluding the "torture" aggravator would not have altered the trial court's sentencing decision, and finding further that the two remaining aggravating circumstances outweigh the mitigating circumstances such that the appropriate penalty for this offense and offender is life imprisonment without parole, we affirm the judgment of the trial court.

### Conclusion

We affirm Long's conviction for murder and sentence of life imprisonment without parole, and his conviction for conspiracy to commit murder. As to the conviction for criminal confinement, we modify the judgment from a class B felony to a class D felony and impose a consecutive sentence of three years. As to the criminal deviate conduct conviction, we modify the judgment from a class A felony to a class B felony and vacate the sentence thereon.

SHEPARD, C.J., and BOEHM, and RUCKER, JJ., concur.

SULLIVAN, J., concurs except as to footnote 6.