Jerry E. RUSSELL, Sr., Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 28S00–9912–CR–692.

Supreme Court of Indiana.

March 9, 2001.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice

The defendant, Jerry E. Russell, was convicted of murder;[1] conspiracy to commit murder, a class A felony;[2] criminal deviate conduct, a class A felony;[3] and criminal confinement, a class B felony[4] for a 1995 criminal episode in Linton, Indiana, that resulted in the death of Pamela Foddrill.[5] Russell was sentenced to life imprisonment without parole for the murder conviction. The trial court also imposed consecutive sentences of fifty years for conspiracy to commit murder, fifty years for criminal deviate conduct, and twenty years for criminal confinement.

In this direct appeal, Russell raises five issues which we reorder as follows: (1) that his wife was allowed to testify over his assertion of spousal privilege; (2) that there was insufficient evidence to convict him of confinement as a class B felony; (3) that there was insufficient evidence to convict him of deviate sexual conduct as a class A felony; (4) that his confinement conviction in light of his murder conviction violates the Indiana double jeopardy clause; and (5) that the trial court relied upon an improper aggravator to sentence him to life without parole.

## 1. Spousal Privilege

Russell claims that the trial court erred in allowing his former wife to testify regarding statements he made to her during their marriage. The State argues that Russell's confessions to unspeakable crimes should not be protected by the law of privileged marital communication. Br. of Appellee at 9. At a hearing during trial out of the presence of the jury, the trial court ruled that some of the communications would be excluded from evidence and others would be admitted.

Russell's former wife was permitted to tell the jury about statements he made to her before his arrest in which he admitted participation with Long and Redman in the sexual assaults on Pamela Foddrill. When Russell made these disclosures to his wife, he threatened that he would kill her if she revealed them. She also testified regarding the content of Russell's telephone calls to her after his arrest from jail in which he instructed her to lie to police about his prior statements and to provide police with false information. These telephone communications were not accompanied by any threat.

■ Indiana law has long protected the privacy of marital communications. This Court recognized over one hundred years ago that "[w]here the criminal, in seeking advice and consolation, lays open

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–41–5–2; Ind.Code § 35–42–1–1.

3. Ind.Code § 35–42–4–2(b)(1).

4. Ind.Code § 35–42–3–3(2).

5. Today, we also decide the cases of Russell's companions, Roger Long and John Redman, who were each separately tried for their roles in these crimes. *Long v. State*, 743 N.E.2d 253 (Ind.2001); *Redman v. State*, 743 N.E.2d 263 (Ind.2001).

his heart to his wife, the law regards the sacredness of their relation, and will not permit her to make known what he communicated, even as it will not ask him to disclose it himself." *Beyerline v. State,* 147 Ind. 125, 130, 45 N.E. 772, 774 (Ind. 1897). "Strong public policy grounds favor promotion and preservation of marital confidences even if truthful and invaluable testimony in certain cases is excluded." *Rode v. State,* 524 N.E.2d 797, 799 (Ind.Ct. App.1988) (*citing Shepherd v. State,* 257 Ind. 229, 277 N.E.2d 165, 167 (1971); *Bergner v. State,* 397 N.E.2d 1012, 1019 (Ind.Ct.App.1979)). Subsequent termination of the marriage does not extinguish the privilege. *Shepherd,* 257 Ind. at 234, 277 N.E.2d at 168; *Bergner,* 397 N.E.2d at 1019; *Perry v. Randall,* 83 Ind. 143 (1882). We have held that where a spouse's testimony concerns disclosures by the other spouse not made in reliance upon the marital relationship but because the disclosing spouse was in need of his mate's assistance and attempted to coerce by force and fear, the testimony is not within the spousal privilege and is admissible. *Carlyle v. State,* 428 N.E.2d 10, 12 (Ind.1981); *see Rode,* 524 N.E.2d at 800. Communications between spouses intended to be transmitted to a third person have also been found to be not privileged. *Perkins v. State,* 483 N.E.2d 1379, 1383 (Ind.1985). In addition, we have held that a wife may disclose a threat made to her by her husband. *Rubalcada v. State,* 731 N.E.2d 1015, 1022 (Ind.2000); *Carlyle,* 428 N.E.2d at 12.

■ Despite Russell's threats during his pre-arrest disclosures to his wife, the content otherwise communicated clearly falls within the marital privilege. The trial court erred in permitting Russell's former wife to testify regarding these statements. As to the post-arrest telephone calls, however, the statements were not disclosures made within the confines of the marital relationship, but rather were an attempt by Russell to persuade his wife to communicate to a third party. *See Perkins,* 483 N.E.2d at 1383; *Carlyle,* 428 N.E.2d at 12.

We decline to find error in permitting this testimony.

■ With regard to the erroneously admitted statements, even erroneously admitted evidence may not require reversal if the error is found to be harmless. *Ford v. State,* 704 N.E.2d 457, 460 (Ind.1998). A harmful error is one that causes prejudice to the appellant's substantial rights. *Id.* (citing *Martin v. State,* 622 N.E.2d 185, 188 (Ind.1993)); *see* Ind.Evidence Rule 103(a).

■ Notwithstanding the significant inculpatory nature of the erroneously admitted testimony, its admission was harmless given the very substantial evidence of guilt properly admitted. Russell admitted in the presence of his wife and another that he had engaged in sex with Foddrill and that they had killed her to keep her quiet. Record at 2619. While incarcerated, Russell admitted to one inmate that he was part of the abduction of Foddrill and engaged in anal and vaginal sex with her, *id.* at 2898–99, and to another inmate admitted that he was there when Foddrill was killed and that he took pictures of Hubbell and Foddrill engaged in sexual acts, *id.* at 2578–79. Wanda Hubbell, an eyewitness to most of the episode, testified to Russell's major role in the sexual attacks, murder, and disposal of the body. We conclude that the overwhelming evidence of guilt renders harmless the erroneously admitted testimony, and that the error did not affect Russell's substantial rights.

### 2. Criminal Confinement as a Class B Felony

■ Russell contends that, while there was evidence that the victim suffered fractured bones, there was no evidence that these injuries resulted from her being forcefully removed from one place to another and that, for this reason, there was insufficient evidence to prove the serious bodily injury element of criminal confinement as a class B felony. This same claim is presented by Russell's co-perpetrator,

Roger Long. As to this issue, substantially the same evidence was presented at both Russell's and Long's trials. For the reasons discussed in our opinion in *Long v. State*, 743 N.E.2d 253 (Ind.2001), we conclude that there was insufficient evidence to permit a jury to find beyond a reasonable doubt that the victim's injuries resulted from the charged criminal offense of criminal confinement by removing the victim from one place to another, and we vacate the conviction as a class B felony and impose it as a class D felony.

 Rather than remand this matter to the trial court for the purpose of determining the appropriate sentence for criminal confinement as a class D felony, we will make the determination, "mindful of the penal consequences that the trial court found appropriate." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind.1999). Finding that the four aggravating circumstances outweighed five mitigating circumstances, the trial court imposed the maximum enhancement of the offense as a class B felony. We likewise impose the maximum enhancement of the offense as a class D felony, sentencing Russell to three years on this count, to run consecutively to his other sentences in this case.

### 3. Criminal Deviate Conduct as a Class A Felony

 Russell contends that there was insufficient evidence of deadly force to prove criminal deviate conduct as a class A felony. He requests that his conviction on this count be reduced to a class B felony. As in the previous issue, this same claim is also presented by Russell's co-perpetrator, Roger Long. As to this issue, substantially the same evidence was presented at both Russell's and Long's trials.

 For the reasons discussed in our opinion in *Long v. State*, 743 N.E.2d 253 (Ind.2001), we conclude that there was insufficient evidence to establish that Russell employed deadly force when he compelled the victim to perform or submit to deviate sexual conduct, and therefore grant his request to modify his conviction for criminal deviate conduct from a class A felony to a class B felony. As in the conviction on criminal confinement, we find no need to remand for resentencing. We impose the maximum enhancement resulting in a sentence of twenty years for this count, to run consecutively to his other sentences.

### 4. Indiana Double Jeopardy

 Russell contends that the Double Jeopardy Clause of the Indiana Constitution [6] requires that we vacate his conviction for criminal confinement.[7] He argues that there is a "reasonable possibility that the evidence used to establish the overt act of abducting Foddrill may also have been used to establish the forceful removal that was alleged in the confinement charge." Br. of Defendant Appellant at 46.

 This is the same claim presented by Russell's co-perpetrator, John Redman. For the reasons explained today in *Redman v. State*, 743 N.E.2d 263 (Ind.2001), to prevail in his claim that the two convictions violate the Indiana Double Jeopardy Clause under the actual evidence test, it is not sufficient merely to show that the same evidence may have been used to prove a *single element* of two criminal offenses. Rather, he must demonstrate a reasonable possibility that the same evidentiary facts were used to prove the *body of essential elements* that comprise both of the offenses. *See Richardson*, 717 N.E.2d at 53. Furthermore, Russell must establish not merely that it is *possible* that the jury used the same evidentiary facts to

**6.** IND. CONST. art. 1, § 14.

**7.** In the alternative, he argues that the Double Jeopardy Clause at least requires that his criminal confinement conviction be reduced to a class D felony. We do not separately address this claim because, in part 2 above, we have already determined that Russell's conviction for criminal confinement must be modified from a class B to a class D felony.

establish the essential elements of both offenses, but rather that the likelihood of this occurrence is sufficiently substantial for us to conclude that it is *reasonably possible* that this occurred. *Redman,* 743 N.E.2d at 267; *Richardson,* 717 N.E.2d at 53.

As charged against Russell, the essential elements of the offense of criminal confinement are: (1) the defendant (2) knowingly or intentionally (3) removed the victim by force from one place to another. Ind.Code § 35–42–3–3. As to conspiracy to commit murder, Russell was charged with agreeing with one or more persons to commit the crime of murder, with the intent to commit murder, and that Russell or his accomplices performed one of the following overt acts in furtherance of the agreement: abduction, confinement, rape, storage of the body, and disposal of the body. Record at 172–73.

The evidence indicated that Russell, Long, and Redman forcibly abducted Pamela Foddrill, a mentally retarded woman, and took her to a residential attic where they confined her for several days, possibly more than a week, during which they compelled her to engage in multiple acts of oral, anal, and vaginal intercourse. After killing her, Russell, Long, and Redman left her body in the attic for several days, then moved it to a nearby shed, and then removed it to a rural wooded site in Illinois.

In argument to the jury, the State did not restrict itself to the abduction as the overt act for conspiracy, although these elements received emphasis. The prosecutor argued that Russell and his accomplices "abducted her, they confined her, they raped her, they disposed of the body. They're plead in the alternative. They're all true, but you need only find that one is true to convict." Record at 3118.

The trial court's final Instruction No. 5, in part advised the jury that the State "must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of

the agreement." *Id.* at 666, 3160. The court's Instruction No. 6, enumerating the elements of the offense of conspiracy to commit murder as charged in this case, included its advisement that, to convict Russell of conspiracy to commit murder, the State must have proved that Russell agreed with another person to commit murder, that he did so with the intent to commit murder, and that Russell or one of the other persons to the agreement performed one or more overt acts in furtherance of the agreement by either abducting, confining, raping, storing, or disposing of the body of Pamela Foddrill. *Id.* at 667, 3161. As to the charge of criminal confinement, the court's Instruction No. 9 authorized conviction upon finding proof beyond a reasonable doubt that Russell knowingly or intentionally removed the victim by force from one place to another. *Id.* at 671, 3163–64.

In view of the extensive evidence of the protracted criminal episode and the court's instructions which clearly authorized any one of several bases for finding the overt act element, we find no sufficiently substantial likelihood that the jury relied on the evidence of the abduction by removal to establish the overt act element of the conspiracy charge. The possibility is remote and speculative and therefore not reasonable. Because there is no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both criminal confinement and conspiracy to commit murder, we reject Russell's claim that his convictions on these counts violated the Indiana Double Jeopardy Clause.

### Improper Aggravator

Russell contends that he was sentenced using an aggravating circumstance that was not listed in the statute at the time the crime was committed. This same claim is also presented, conceded by the State, and discussed in our opinion in *Long,* 743 N.E.2d 253. As in *Long,* we find that Russell's sentence of life imprisonment

without parole is appropriate by reason of both the harmless error doctrine and independent appellate reweighing.

 The State charged, and the trial court found proven beyond a reasonable doubt, the existence of three aggravating circumstances: that Russell intentionally killed Pamela Foddrill while committing or attempting to commit criminal deviate conduct or rape,[8] that Foddrill was a victim of criminal confinement or rape,[9] and that Russell tortured her.[10] We agree that the State proved beyond a reasonable doubt that as a major participant in her death, Russell intentionally killed Foddrill. He intended that she be killed, and he supplied the knife Redman used to stab Foddrill. We also find beyond a reasonable doubt that Russell committed criminal deviate conduct upon Foddrill, and that she was a victim of criminal confinement and rape.

The trial court considered five mitigating circumstances: (1) Russell's limited education and mental deficiency (although the court found this did not rise to the level of a legal defense or negate responsibility); (2) his family history of neglect; (3) Russell's participation, while incarcerated, in Bible correspondence courses and his intention to minister to others; (4) his expression of sorrow for the victim and the victim's family; and (5) Russell's help is needed to care for a disabled brother and his mother who is blind and diabetic. Russell contends that the trial court did not give adequate weight to his significantly subaverage intellectual functioning and substantial impairment of adaptive behavior. He emphasizes that his family history reveals significant evidence of neglect and argues that the neglect further exacerbated his mental condition.

We are convinced that, absent consideration of the torture aggravator in the sentencing decision, the trial court would nevertheless have sentenced Russell to life imprisonment without parole.

Furthermore, upon independent appellate reweighing of the aggravating and mitigating circumstances found by the trial court, but excluding any consideration of the torture aggravator, and considering Russell's argument that his mental deficiencies deserve additional weight, and with due regard for the recommendation of the jury, we find that such mitigating circumstances are substantially outweighed by the aggravating circumstances. We are cognizant of and sympathetic to Russell's mental limitations, his history of family neglect, his Bible study and desire to minister to others, his expression of sorrow, and the needs of his mother and brother. In our judgment, however, these factors do not supply sufficient explanation for Russell's conduct or otherwise offset the gravity of the aggravating circumstances.

Finding that excluding the "torture" aggravator would not have altered the trial court's sentencing decision, and finding further that the appropriate penalty for this offense and offender is life imprisonment without parole, we affirm the judgment of the trial court.

### Conclusion

We affirm Russell's conviction for murder and his sentence of life imprisonment without parole. We also affirm his conviction for conspiracy to commit murder. As to criminal confinement, we modify the judgment from a class B felony to a class D felony and impose a sentence of three years, to be served consecutively. As to criminal deviate conduct, we modify the judgment from a class A felony to a class B felony and impose a sentence of twenty years, to be served consecutively.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

8. Ind.Code § 35–50–2–9(b)(1).

9. Ind.Code § 35–50–2–9(b)(13).

10. Ind.Code Ann. § 35–50–2–9(b)(11) (Michie 1998).