## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 25 2019, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William E. Boyd,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 25, 2019

Court of Appeals Case No.
19A-CR-160

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Judge

Trial Court Cause No.
02D06-1711-F5-332

**Bailey, Judge.**

# Case Summary

William E. Boyd ("Boyd") was convicted of Criminal Confinement, as a Level 3 felony,[1] Battery, as a Level 5 felony,[2] and Sexual Battery, as a Level 6 felony.[3] On appeal, he challenges the Criminal Confinement conviction. We affirm in part, reverse in part, and remand with instructions to enter judgment upon the Level 5 felony Battery as a Class B misdemeanor and resentence Boyd accordingly.

# Issues

We address the following issues:

    I.    Whether the State presented sufficient evidence that Boyd committed Criminal Confinement resulting in serious bodily injury; and

    II.    Whether the Criminal Confinement enhancement and the Battery enhancement were based upon the same facts.

# Facts and Procedural History

During the evening of November 13, 2017, Sheri Fincher ("Fincher") visited the home of her neighbor, Barbara Barnes ("Barnes"). Boyd was also a guest.

---

[1] Ind. Code § 35-42-3-3.

[2] I.C. § 35-42-2-1.

[3] I.C. § 35-42-4-8.

He was drinking heavily and became verbally and physically abusive toward Fincher. Barnes told Boyd to leave, and Fincher also decided to leave despite Barnes urging her to stay for her own safety. Fincher went back to her apartment and was playing a game when Boyd knocked at her door. He asked to wait in the apartment until his ride showed up and Fincher agreed that he could do so.

[4] Fincher went back to her bedroom to continue playing her game and Boyd followed. An intoxicated Boyd repeatedly questioned Fincher and demanded that she listen to him. When Fincher continued to play her game and did not answer all the questions, Boyd became angry and struck Fincher on the left side of her face. Fincher was knocked unconscious; when she regained consciousness, she became aware that she was bleeding from her mouth. At first, she feared that her teeth had been knocked out.

[5] Boyd told Fincher to get up and clean herself up in the bathroom. Fincher complied, with Boyd following closely behind her. As Fincher rinsed her bloody mouth and washed her face, Boyd stood behind her. Fincher returned to the bedroom, with Boyd following. He then struck her in the head three more times, took his clothes off, threw Fincher onto the bed, and laid on top of her. Boyd stated that it was his birthday and he "wanted to be with someone." Tr. Vol. I, pg. 39. Fincher responded that she did not want to be with Boyd and that she was instead prepared to be killed.

[6] Boyd passed out and fell against the bedroom wall. Seizing her opportunity to escape, Fincher grabbed her shoes and ran outside. She ran to Barnes's apartment and awakened her by pounding on the window. Barnes called 9-1-1. At around 3:00 a.m., responding police officers found Boyd in Fincher's bedroom, nude and apparently passed out. He was transported to a hospital due to his extreme level of intoxication. Fincher received medical treatment for her injuries a few days later. She had a ruptured eardrum, a red mark on her neck, and abrasions. She later testified that she had experienced lingering back pain and difficulty hearing.

[7] On October 24, 2018, Boyd was brought to trial before a jury on charges of Criminal Confinement, Battery, Sexual Battery, and Strangulation. He was acquitted of Strangulation and convicted of the remaining charges. He received an aggregate sentence of nine years imprisonment (nine years for Criminal Confinement and concurrent sentences of three years for Battery and one year for Sexual Battery). He now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[8] Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime

proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[9] Pursuant to Indiana Code Section 35-42-3-3(a), a person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement, a Level 6 felony. There are two types of criminal confinement, confinement by non-consensual physical restraint and by forcible removal. *State v. Greene*, 16 N.E.3d 416, 420 (Ind. 2014). The offense is a Level 3 felony if it results in serious bodily injury to a person other than the confining person. I.C. § 35-42-3-3(b)(2)(B). Boyd challenges both the evidence of confinement and the elevation of the offense.

[10] To "confine" a person means to "substantially interfere with the liberty of a person." I.C. § 35-42-3-1. "We have previously held that in order to prove confinement beyond the main crime charged, there must be something more than the act necessary to effectuate the crime." *Kelley v. State*, 2 N.E.3d 777, 787 (Ind. Ct. App. 2014). Fincher testified that, when she regained consciousness after the initial blow to her head, Boyd ordered her to go into the bathroom. He followed and "was standing right behind [her]" and when she returned to the bedroom, he was "right behind [her]" as well. Tr. Vol. I, pg. 38. Fincher testified that she could not leave after Boyd entered her bedroom because "he would not move from in front of me." *Id.* at 36. The evidence is sufficient to permit a reasonable fact finder to conclude that – apart from striking Fincher in the commission of Battery and holding Fincher down in the

commission of Sexual Battery – Boyd repeatedly blocked Fincher's movements, thereby substantially interfering with her liberty.

[11] The charged offense was elevated to a Level 3 felony because of Fincher's serious bodily injury.[4] Boyd concedes that Fincher was injured and that a fact finder could have found that she sustained serious bodily injury. However, he contends that the State presented no evidence that Fincher was injured as a result of the confinement. The State responds that Boyd's act of knocking Fincher unconscious facilitated her confinement, and thus there was a temporal link between the injury and confinement such that they constituted one incident.

[12] The State directs our attention to *Greene*, 16 N.E.3d at 416. Greene had been convicted of Class B felony criminal confinement stemming from a two-day incident in which he held his girlfriend captive. Greene had strangled his girlfriend, and rendered her unconscious; when she regained consciousness, she was in another room of the house. Greene was charged with criminal confinement by removal. On transfer following the denial of post-conviction relief, Greene argued that his trial counsel had been ineffective for failing to argue that Greene was entitled to relief under *Long v. State*, 743 N.E.2d 253 (Ind. 2001).

---

[4] "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of the function of a bodily member or organ, or loss of a fetus." I.C. § 35-31.5-2-292.

[13]     The *Greene* Court summarized the holding in *Long*:

> Long insisted that although there was evidence that his victim []
> suffered fractured facial bones, there was no evidence that these
> injuries resulted from her being forcefully removed from one
> place to another.  Without such evidence, he reasoned, there was
> insufficient evidence to establish the serious bodily injury
> enhancement.  The State countered that "the jury could have
> inferred that [the victim]'s injuries to her nose and eye socket
> were caused during her movement from one place to another"
> but did not identify any evidence as proof.  On review, we found
> that "the evidence was insufficient to establish that the conduct
> constituting *the charged offense* of criminal confinement resulted in
> serious bodily injury."
>
> Crucially, "the charged offense" was that (1) Long (2) knowingly
> or intentionally (3) removed the victim from one place to another
> (4) by force.  Ind. Code § 35-42-3-3.  At issue were elements three
> *and* four, and without identifying the circumstances under which
> [the victim] sustained facial fractures, the State could not
> establish beyond a reasonable doubt that [the victim]'s serious
> bodily injury occurred *during* her forcible removal from one place
> to another.  This was likely attributable to the facts of the case:
> Long and two others confined [the victim] for possibly longer
> than one week in an attic, and in the course of her captivity and
> murder, inflicted numerous injuries upon her.  Under these
> circumstances, the State was likely unable to isolate precisely
> when [the victim] sustained her fractures.  Thus, the jury was
> unable to find that serious bodily injury resulted from her forcible
> removal.

16 N.E.3d at 420 (citing *Long*, 743 N.E.2d at 259-60, 262) (emphasis added in

*Greene*).

[14] After examining the *Long* decision, the *Greene* Court found it factually distinguishable. Greene's victim had testified that Greene strangled her to unconsciousness. As such, "the jury could have reasonably inferred that Greene's act of force, strangulation, both facilitated his removal of [the victim] from their bedroom to their living room and resulted in serious bodily injury to her." *Id.* The Court recognized that there must be a "temporal link" between inducement and removal "so as to constitute one incident" but did not "require the serious bodily injury to be suffered by the victim during the actual act of removal from one place to another." *Id.* at 421. It held that "serious bodily injury to the victim must be sustained during the charged offense of criminal confinement … Thus, the victim must suffer serious bodily injury as the result of the act of forcible removal, whether or not the act of force occurs simultaneously with the act of removal." *Id.* at 423.

[15] Here, Boyd was charged with confinement by restraint as opposed to confinement by removal. Nonetheless, we agree with the State that there is a temporal link here between the force and restraint employed – Boyd gained control of Fincher by rendering her unconscious and when she regained consciousness, he directed her movements and impeded her escape. The jury could reasonably conclude that Boyd's confinement of Fincher resulted in serious bodily injury. However, we proceed to determine whether Boyd has incurred multiple penal consequences for the same serious bodily injury.

## Double Jeopardy – Elevation of Offense

[16]    Frequently discussed under the general rubric of Indiana double jeopardy jurisprudence, we recognize rules of statutory construction and common law that are in addition to the protections afforded by the Indiana Double Jeopardy Clause. *Zieman v. State*, 990 N.E.2d 53, 61 9Ind. Ct. App. 2013). One prohibition is against "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002).

[17]    Here, the charging information stated the elements of the crimes but did not include details to indicate which facts supported the individual charges. The State alleged and demonstrated that Fincher had sustained serious bodily injury but did not, in closing argument, attempt to attribute a specific injury to a specific crime. Our review of the evidence discloses the following. Boyd struck Fincher in the head four times; she suffered a ruptured eardrum and impairment of her hearing. She experienced lingering back pain (and this appears from her testimony to be attributed to her being held down with the force of Boyd's weight during the commission of Sexual Battery). The elevation of the Criminal Confinement offense and the elevation of the Battery offense are based upon evidence that Fincher sustained serious bodily injury from Boyd striking her on her head. Multiple enhancements based upon the same facts cannot stand, and we may reduce one of the offenses to obviate double jeopardy concerns. *Caldwell v. State*, 43 N.E.3d 258, 269 (Ind. Ct. App.

2015).  As Battery is the offense having lesser penal consequences, we elect to revise the Battery offense to a Class B misdemeanor.[5]  *See Thompson v. State*, 82 N.E.3d 376, 383 (Ind. Ct.App. 2017) (recognizing that a reviewing court may remedy a violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation).

# Conclusion

[18]  There is sufficient evidence to support Boyd's conviction of Criminal Confinement, as a Level 3 felony.  However, to obviate double jeopardy concerns, we reduce the Battery conviction to a Class B misdemeanor.

[19]  Affirmed in part, reversed in part, and remanded.

Riley, J., and Pyle, J., concur.

---

[5] Battery, as a Class B misdemeanor, is committed when a person knowingly or intentionally touches another person in a rude, insolent, or angry manner.  I.C. § 35-42-2-1(c)(1).