

FILED

Jan 11 2018, 7:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.R., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br><br> *Appellee-Petitioner* | January 11, 2018 <br><br> Court of Appeals Case No. 47A04-1705-JV-944 <br><br> Appeal from the Lawrence Circuit Court <br><br> The Honorable John M. Plummer, III, Judge Pro Tempore <br><br> Trial Court Cause Nos. 47C01-1409-JD-294, 47C01-1609-JD-342 |

**Crone, Judge.**

## Case Summary

[1] When R.R., a seventeen-year-old juvenile, did not appear for the combined factfinding hearings in his juvenile delinquency and probation violation cases, the trial court held the hearings in his absence and found that he committed the

charged offenses and violated his probation. R.R. now appeals, arguing that he had a constitutional right to be present at the hearings and that the trial court violated that right by holding them in his absence. The State argues that R.R. waived any such right by refusing to appear. In response, R.R. argues that under the juvenile waiver statute, Indiana Code Section 31-32-5-1, he could not validly waive that right because he was not emancipated.

[2] We hold that although juveniles have a constitutional right to be present at factfinding hearings in delinquency and probation proceedings, the trial court had the authority to find R.R. to be in a position of procedural default under the particular facts of this case, where R.R. knowingly and intentionally refused to appear. The legislature would not have intended for the juvenile waiver statute to allow nearly emancipated young adults to ignore trial court orders and thwart the operation of the juvenile justice system by intentionally refusing to appear at dispositional hearings. Therefore, we affirm.

## Facts and Procedural History

[3] In September 2014, under cause number 47C01-1409-JD-294 ("JD-294"), the State filed a petition alleging that R.R. was a delinquent child for committing criminal mischief, a class B misdemeanor if committed by an adult. R.R. admitted to the allegation and was placed on supervised probation until the following September.

[4] Between May and September 2015, the State filed seven petitions to modify R.R.'s probation.[1] Eventually the trial court placed R.R. in residential treatment at Southwest Indiana Regional Youth Village. In June 2016, the court released R.R. from residential treatment and ordered him to remain on supervised probation for six months.

[5] Between August 2016 and January 2017, the State filed four additional petitions to modify R.R.'s probation in JD-294.[2] In September 2016, under cause number 47C01-1609-JD-342 ("JD-342"), the State filed a petition alleging that R.R. was a delinquent child for committing the new offenses of auto theft, a class D felony if committed by an adult, and false informing, a class B misdemeanor if committed by an adult.

[6] On October 31, 2016, a joint pretrial conference was held in JD-294 and JD-342; R.R. was present at this hearing along with his attorney and his mother, with whom he lived. Tr. Vol. 2 at 183. The trial court went off the record and scheduled factfinding hearings in both cases for January 17, 2017. *Id.* at 188; Appellant's App. Vol. 2 at 127 (JD-294), 157 (JD-342). On January 5, the State

---

[1] The petitions alleged that R.R. (1) had unexcused absences at school; (2) failed to attend therapy sessions at Youth Village; (3) failed to complete community service; (4) violated curfew; (5) had contact with a person on probation; and (6) tested positive for marijuana. Appellant's App. Vol. 2 at 50-71.

[2] The petitions alleged that R.R. (1) failed to complete GED orientation and attend GED classes; (2) committed new offenses (auto theft and false informing); (3) failed to complete treatment at Centerstone; (4) violated curfew; (5) consumed alcohol; (6) failed to appear for a urine drug screen; (7) failed to attend probation appointments; (8) failed to complete community service; and (9) had contact with a person on probation. Appellant's App. Vol. 2 at 111-32.

filed a motion to continue the hearings. The next day, the court granted the State's motion and issued an order rescheduling the hearings for February 7 and directing R.R. and his mother to appear. *Id.* at 129 (JD-294), 157 (JD-342).

[7] On January 20, 2017, in JD-294, the State requested an order from the trial court to take R.R. into custody. The State alleged that R.R. "ha[d] not been in compliance with the terms and conditions of probation since he was discharged from the Southwest Indiana Regional Youth Village on June 23, 2016[,]" in that he had failed to attend his probation appointments on January 6 and 20 and failed to attend his urine drug screen on January 17. *Id.* at 133; *see also id.* at 131-32 (alleging that R.R. had also failed to attend GED classes and complete community service). The court issued an order authorizing law enforcement to take R.R. into custody and detain him at the Jackson County Juvenile Detention Center. *Id.* at 135. As it turned out, R.R. remained at large for over two months.

[8] R.R., who by then was nearly seventeen and a half years old,[3] did not appear at the factfinding hearings on February 7. R.R.'s attorney and mother both appeared. When the trial court asked R.R.'s mother if she knew where R.R. was, she responded, "No. He hasn't even called me since he left. I thought we had an appointment on the 30th and I tried to make him go and he took off and I haven't seen him since." Tr. Vol. 3 at 2. The court responded, "Well, let the

---

[3] R.R. turned eighteen years old on October 10, 2017.

record reflect that this child's whereabouts are unknown. The child's mother is here. She doesn't know where he is. Sounds like he's been gone for seven (7) or eight (8) days." *Id.* The court then confirmed with R.R.'s mother that she had not heard from him at all. The court asked the prosecutor what she wanted to do, and the prosecutor said that she wanted to proceed in R.R.'s absence. Defense counsel objected and requested a continuance "so that [R.R.] can be present at his hearing." *Id.* at 3. Notably, neither defense counsel nor R.R.'s mother alleged that R.R. did not have notice of the rescheduled factfinding hearings. The court denied defense counsel's motion to continue because "the child's whereabouts are unknown, mother is present, [and] the child has taken off." *Id.* The court then held factfinding hearings in both JD-294 and JD-342. At the conclusion of the hearings, the court entered true findings for auto theft and false informing in JD-342 and found that R.R. violated his probation in JD-294. Appellant's App. Vol. 2 at 136 (JD-294), 180 (JD-342).

[9] R.R. was finally detained on the outstanding pick-up order on March 29, 2017, and he appeared in court the next day with his attorney and mother for the dispositional hearings in JD-294 and JD-342. At the beginning of the hearing, the prosecutor reiterated R.R.'s failure to appear on February 7. When R.R. took the stand, he testified that "[a]bout two (2) weeks ago," he started "hanging out at a boys home in Bedford." Tr. Vol. 3 at 74. However, R.R. proffered no reason for his failure to appear on February 7. The director of the Bedford Boys Home then testified that R.R. "came to us about … five (5) days ago" and that after talking with R.R. he learned that there was an outstanding

pick-up order for him. *Id.* at 80. The director testified that he told R.R. that he should turn himself in. The trial court awarded wardship of R.R. to the Department of Correction in both cases. This appeal ensued.

## Discussion and Decision

[10] R.R. contends that he had a constitutional right to be present at the factfinding hearings in JD-294 and JD-342 and that the trial court violated that right by holding them in his absence. He first notes that "the right of a child to be present at delinquency fact-finding [hearings] has not been squarely addressed by [Indiana] appellate courts[.]" Appellant's Br. at 9. It is well established that defendants in criminal proceedings have the constitutional right to be present at all stages of their trial. *See Jackson v. State*, 868 N.E.2d 494, 498 (Ind. 2007) (citing U.S. CONST. amend. VI and IND. CONST. art. 1, § 13). And although probation revocation hearings are in the nature of a civil action, probationers have the constitutional right to be present because revocation implicates their liberty interest. *Mathews v. State*, 907 N.E.2d 1079, 1081-82 (Ind. Ct. App. 2009). "Juvenile delinquency proceedings are civil proceedings, not criminal proceedings, and are based on a philosophy of social welfare rather than criminal punishment." *D.M. v. State*, 949 N.E.2d 327, 333 n.6 (Ind. 2011). Nevertheless, because delinquency and probation proceedings threaten a juvenile's loss of liberty, we see no reason why juveniles should not be afforded the same constitutional right as criminal defendants and probationers and therefore recognize that juveniles have a general right to be present at delinquency and probation factfinding hearings. *Cf. In re Gault*, 387 U.S. 1, 31-

57 (1967) (holding that juveniles in delinquency proceedings are constitutionally entitled to notice of charges, right to counsel, rights of confrontation and cross-examination, and privilege against self-incrimination).[4] Notably, the State does not argue otherwise. *See* Appellee's Br. at 15 (State assuming arguendo that juveniles have right to be present at delinquency factfinding hearings).

[11] Having established that R.R. had the right to be present at the February 7 factfinding hearings, the question then becomes whether a hearing can ever be held in his absence. If a criminal defendant knowingly and voluntarily waives the right to be present, a trial may occur in the defendant's absence. *Jackson*, 868 N.E.2d at 498. As the Indiana Supreme Court has stated:

> When a defendant fails to appear for trial and fails to notify the trial court or provide it with an explanation of his absence, the trial court may conclude that defendant's absence is knowing and

---

[4] Indiana Code Chapter 31-32-2 lists the rights of juveniles. Indiana Code Section 31-32-2-1 provides:

> Except when a child may be excluded from a hearing under IC 31-32-6, a child is entitled to:
> (1) cross-examine witnesses;
> (2) obtain witnesses or tangible evidence by compulsory process; and
> (3) introduce evidence on the child's own behalf.

In addition, Indiana Code Section 31-32-2-2 provides:

> In addition to the rights described in section 1 of this chapter, a child charged with a delinquent act is also entitled to:
> (1) be represented by counsel under IC 31-32-4;
> (2) refrain from testifying against the child; and
> (3) confront witnesses.

Although the right to be present is not a listed right, constitutional rights are not determined by the legislature in statutes.

> voluntary and proceed with trial when there is evidence that the
> defendant knew of his scheduled trial date.

*Id.* (quoting *Freeman v. State*, 541 N.E.2d 533, 535 (Ind. 1989)). "The best evidence that a defendant knowingly and voluntarily waived his or her right to be present at trial is the 'defendant's presence in court on the day the matter is set for trial.'" *Lampkins v. State*, 682 N.E.2d 1268, 1273 (Ind. 1997) (quoting *Fennell v. State*, 492 N.E.2d 297, 299 (Ind. 1986)), *modified on other grounds on reh'g*, 685 N.E.2d 698. Thus, when a defendant knows of the trial date but fails to appear, the trial court may presume that the defendant knowingly and voluntarily waived the right to be present at the trial and try the defendant in absentia. *Brown v. State*, 839 N.E.2d 225, 227 (Ind. Ct. App. 2005), *trans. denied* (2006). A defendant who has been tried in absentia "must be afforded an opportunity to explain his absence and thereby rebut the initial presumption of waiver." *Id.* This, however, does not require a sua sponte inquiry from the trial court. *Holtz v. State*, 858 N.E.2d 1059, 1063 (Ind. Ct. App. 2006), *trans. denied* (2007). Rather, the defendant cannot be prevented from giving an explanation. *Id.* Upon appellate review, we look to the entire record to determine whether waiver of the right to be present at trial was knowing and voluntary. *Brown*, 839 N.E.2d at 228.

[12] Applying these principles to R.R., the record shows that he was present in court and represented by counsel on October 31 when the trial court scheduled the factfinding hearings for January 17. On January 5, the State filed a motion to continue the hearings. The next day, the court granted the State's motion and

entered an order rescheduling the hearings for February 7. Appellant's App. Vol. 2 at 129. R.R. was living with his mother at this time. During this same time, however, R.R. was not complying with his probationary requirements. That is, he missed appointments with his probation officer on January 6 and 20 and a drug screen on January 17. He also was not attending GED classes or completing community service. As a result, on January 20, the court issued an order authorizing law enforcement to take R.R. into custody. R.R.'s mother tried to get R.R. to go to an appointment on January 30, but he "took off." Tr. Vol. 3 at 2. At the February 7 factfinding hearings, R.R. still had not returned home and his mother had not heard from him. R.R.'s counsel requested a continuance but offered no grounds other than R.R.'s absence. Accordingly, the court held the factfinding hearings in R.R.'s absence. R.R. was ultimately detained on the pick-up order on March 29, and he appeared in court the next day for the dispositional hearings. R.R.—who was aware of the outstanding pick-up order, which notably was issued *after* the trial court rescheduled the factfinding hearings—testified that he had been at the Bedford Boys Home for the past two weeks. R.R., however, did not say why he did not appear for the factfinding hearings on February 7. And on appeal, R.R. again offers no explanation for his absence. As such, the record viewed in its entirety, including R.R.'s familiarity with and pattern of noncompliance with the juvenile justice system at the time of his factfinding hearings, the fact that he knew about the pick-up order, and his failure to provide an explanation for his absence, supports the conclusion that R.R.'s absence from the February 7

factfinding hearings was knowing and voluntary. But this is not the end of the matter.

[13] In his reply brief, R.R. cites the juvenile waiver statute, Indiana Code Section 31-32-5-1, which reads as follows:

> Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:
>
> (1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;
>
> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>
>> (A) that person knowingly and voluntarily waives the right;
>>
>> (B) that person has no interest adverse to the child;
>>
>> (C) meaningful consultation has occurred between that person and the child; and
>>
>> (D) the child knowingly and voluntarily joins with the waiver; or
>
> (3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:
>
>> (A) the child knowingly and voluntarily consents to the waiver; *and*

(B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27,[5] by virtue of having married, or in accordance with the laws of another state or jurisdiction.

(Emphasis added.) R.R. observes that neither his counsel nor his mother waived his right to be present at the factfinding hearings, and he argues that he could not validly waive that right pursuant to the statute because he was not emancipated.

[14] Under R.R.'s interpretation of the juvenile waiver statute, unemancipated juveniles could hijack trial court dockets and avoid responsibility for their delinquent behavior by knowingly and voluntarily (and repeatedly) refusing to appear at factfinding hearings. We can safely say that our legislature would not have intended such an absurd result when it enacted the statute back in 1997. *See State ex rel. Hatcher v. Lake Super. Ct., Room Three*, 500 N.E.2d 737, 739 (Ind. 1986) (stating that courts cannot presume that legislature "intended to do an absurd thing"). Unlike confrontation or cross-examination, appearing at a factfinding hearing is not only a constitutional right; it is also a responsibility imposed by court order. *See* Appellant's App. Vol. 2 at 129 (trial court's order directing R.R. and his mother to appear at February 7 hearings). By refusing to appear for a factfinding hearing, an unemancipated juvenile defaults on his court-ordered obligation, and he cannot rely on the juvenile waiver statute to

---

[5] Both statutes require the juvenile court to find that the juvenile "wishes to be free from parental control and protection and no longer needs that control and protection," "has sufficient money for the child's own support," and "has an acceptable plan for independent living." *See* Ind. Code §§ 31-34-20-6, 31-37-19-27.

rescue him from this default. *See Jackson*, 868 N.E.2d at 497 ("Of course, the constitutional rights of Jackson and every other accused must be strictly enforced. But a defendant cannot be permitted to manipulate the system simply by refusing to show up for trial."). In sum, we conclude that the legislature would not have intended for the juvenile waiver statute to apply in this situation. Therefore, we affirm.

Affirmed.


Mathias, J., concurs.

Vaidik, C.J., dissents with opinion.

ATTORNEY FOR APPELLANT

Cara Shaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.R., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | January 11, 2018 <br><br> Court of Appeals Case No. 47A04-1705-JV-944 <br><br> Appeal from the Lawrence Circuit Court <br><br> The Honorable John M. Plummer, III, Judge Pro Tempore <br><br> Trial Court Cause No. 47C01-1409-JD-294 47C01-1609-JD-342 |

**Vaidik, Chief Judge, dissenting.**

I agree with the majority that juveniles have a constitutional right to be present at delinquency and probation fact-finding hearings. But my agreement with the majority ends here.

[17]     Indiana Code section 31-32-5-1, the juvenile waiver-of-rights statute, governs

the waiver of "**any rights**" guaranteed to a child under the United States and

Indiana Constitutions and sets forth three ways that waiver can occur:

> **Any rights** guaranteed to a child under the Constitution of the
> United States, the Constitution of the State of Indiana, or any
> other law may be waived **only**:
>
> (1) by counsel retained or appointed to represent the child if the
> child knowingly and voluntarily joins with the waiver;
>
> (2) by the child's custodial parent, guardian, custodian, or
> guardian ad litem if:
>
>> (A) that person knowingly and voluntarily waives the
>> right;
>>
>> (B) that person has no interest adverse to the child;
>>
>> (C) meaningful consultation has occurred between that
>> person and the child; and
>>
>> (D) the child knowingly and voluntarily joins with the
>> waiver; or
>
> (3) by the child, without the presence of a custodial parent,
> guardian, or guardian ad litem, if:
>
>> (A) the child knowingly and voluntarily consents to the
>> waiver; **and**

(B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.

(Emphases added). I believe that Section 31-32-5-1 is unambiguous and therefore must be given its clear and plain meaning. *See State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004) ("If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." (quotation omitted)), *reh'g denied*. Under the plain meaning of this statute, **any right** guaranteed to a child by the constitution (which we all agree includes the right to be present at delinquency and probation fact-finding hearings) may be waived in **only** one of three ways, and if one of these three ways is not satisfied, the right simply may not be waived.

[18] In addition, I believe that reading the statute this way fits in with the structure of the juvenile code as a whole: to protect children. *See ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) ("Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole."). The juvenile-justice system is founded on the notion of parens patriae, which allows the court the power to step into the shoes of the parents; this is because children, by definition, are not assumed to have the capacity to take care of themselves. *In re K.G.*, 808 N.E.2d 631, 635 (Ind. 2004). As our Supreme Court explained in *K.G.*, although children generally are protected by the same constitutional guarantees against governmental deprivations as adults, the State is entitled to adjust its legal

system to account for children's vulnerability and their needs for concern, sympathy, and paternal attention. *Id.* at 636. Moreover, it is the policy of this State and the purpose of the juvenile code to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." Ind. Code § 31-10-2-1(5).

[19] My colleagues, however, believe that the legislature could not have intended for the juvenile waiver-of-rights statute to apply to a juvenile's right to be present at delinquency and probation fact-finding hearings because applying the statute to the right to be present produces "absurd" results. Slip op. at 11. The Indiana Supreme Court recently examined the absurdity doctrine in *Calvin v. State*, No. 02S03-1709-CR-611 (Ind. Dec. 21, 2017). In that case, the State argued that under the plain meaning of Indiana's habitual-offender statutes, the fact that prior non-Indiana felonies count as Level 6 felonies (and a habitual-offender finding cannot be based on two Level 6 felonies) leads to absurd results. Our Supreme Court—acknowledging that the absurdity doctrine is "strong medicine" that can defeat the plain meaning of statutes—concluded that the absurdity doctrine did not apply. Slip op. at 5. The Court reasoned that case law had upheld the plain meaning of the statutes for nearly three decades and that invoking the absurdity doctrine would "expand criminal liability beyond the habitual-offender statutes' long-settled plain meaning—a result at odds with separation-of-powers principles and our narrow construction of criminal statutes." *Id.* The Court specifically noted that "the legislature is

constitutionally subject to process requirements and political responsibility in ways that the judiciary is not." *Id.* at 6.

[20] I believe that many of these same concerns apply here and that this case likewise "falls outside the doctrine's boundaries" given the plain meaning of Section 31-32-5-1. *Id.* at 7. Admittedly, this case is difficult because R.R. was over seventeen years old when he failed to appear, as opposed to ten years old. But Section 31-32-5-1 does not make distinctions based on age. *See Hickman v. State*, 654 N.E.2d 278, 281 (Ind. Ct. App. 1995) ("The taped confession at issue was taken on October 7, 1993, at which time Hickman was two months away from his eighteenth birthday. Thus . . . Hickman was a 'child' at the time of the confession and entitled to the protections provided to children under our juvenile code."). At the end of the day, this is the call of our legislature, and if this is not what they intended (as my colleagues believe), then "[a]ny change must . . . fall to the legislature's corrective pen." *Calvin*, slip op. at 7. Because it is undisputed that R.R. did not waive his right to be present pursuant to one of the three ways set forth in Section 31-32-5-1, I would reverse the juvenile court and remand this case for further proceedings.