


IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-JV-230

## R.R.,
*Appellant*

–v–

## State of Indiana,
*Appellee*

Argued: May 31, 2018 | Decided: September 13, 2018

Appeal from the Lawrence Circuit Court
Nos. 47C01-1409-JD-294, 47C01-1609-JD-342
The Honorable John M. Plummer, III, Judge Pro Tempore

On Petition to Transfer from the Indiana Court of Appeals
No. 47A04-1705-JV-944

### Opinion by Justice Slaughter

Justice Goff concurs.
Chief Justice Rush concurs in Parts I.B. and II. and dissents from Part I.A.,
with separate opinion.
Justice Massa concurs in Part I.A. and dissents from Parts I.B. and II., with
separate opinion.
Justice David dissents with separate opinion, which Chief Justice Rush joins
in part and which Justice Massa joins in part.

**Slaughter, Justice.**

At a fact-finding hearing where R.R., a juvenile, was not present, the trial court found R.R. violated his probation and adjudicated him a delinquent for auto theft and false informing. R.R. argues that (1) juveniles have a due-process right to be present at such hearings, and (2) the trial court violated this right by holding the hearing in his absence. We assume without deciding that R.R. is correct on the first issue and agree with him on the second. We thus reverse the trial court's delinquency determination and remand for further proceedings.

## Factual and Procedural History

In September 2014, the State alleged R.R., then fourteen years old, committed criminal mischief, a Class B misdemeanor for an adult. R.R. admitted the allegations, and the court placed him on supervised probation for six months. Beginning in May 2015, the State filed multiple petitions to modify R.R.'s probation because he had violated the terms of his probation. These modifications included housing him in a residential treatment center for at-risk youth. The court ordered R.R. released from this facility in June 2016 and placed him back on probation for six months. Only six weeks later, the State again petitioned the court to modify R.R.'s probation, noting more violations. In September 2016, the State alleged R.R. committed auto theft, which would be a Level 6 felony had he been an adult, and false informing, which would be a Class B misdemeanor. In January 2017, the State filed a "Request for Taking Child Into Custody" based on that September 2016 petition.

On February 7, 2017, the court held a fact-finding hearing concerning the September 2016 petition and the January 2017 request. R.R. was not present, but his mother and counsel did appear. When asked if she knew where her son was, R.R.'s mother answered, "No. He hasn't even called me since he left." The court responded, "Well, let the record reflect that this child's whereabouts are unknown. The child's mother is here. She doesn't know where he is. Sounds like he's been gone for seven (7) or eight (8) days."

The State offered to proceed in R.R.'s absence, but R.R.'s counsel balked. When asked if she objected to proceeding, R.R.'s counsel said, "Yeah, I do object to that and I request a continuance so that [R.R.] can be present at his hearing." The court denied the motion and proceeded with the fact-finding hearing despite R.R.'s absence. After the hearing, the court found R.R. had violated the terms of his probation and committed auto theft and false informing.

Nearly two months later, on March 30, police detained R.R. under a pick-up order, and he appeared at a dispositional hearing the same day. At the hearing, the court ordered that R.R. be made a ward of the Indiana Department of Correction. R.R. appealed, arguing he had a constitutional right to appear at his fact-finding hearing, and the court violated that right by holding the hearing in his absence.

A divided Court of Appeals affirmed in a published opinion, concluding R.R. had a right to be present at the hearing, but had waived this right because he "knowingly and intentionally refused to appear." *R.R. v. State*, 93 N.E.3d 768, 770 (Ind. Ct. App. 2018). Adopting R.R.'s interpretation would, the court observed, allow juveniles to "hijack trial court dockets and avoid responsibility for their delinquent behavior by knowingly and voluntarily (and repeatedly) refusing to appear at factfinding hearings." 93 N.E.3d at 774-75. The dissent believed R.R. had not waived his right to appear because his conduct did not conform to the waiver requirements outlined in our juvenile-waiver statute, Indiana Code chapter 31-32-5. *Id.* at 775-76 (Vaidik, C.J., dissenting). We granted transfer, thus vacating the Court of Appeals' opinion, and now reverse.

## Standard of Review

At issue here are two questions of first impression: first, whether juveniles have a due-process right to appear at a fact-finding hearing; and, second, if they have such a right, how they can waive it. Both the existence of constitutional rights and the requirements for waiving them are legal questions we review de novo. When determining whether a juvenile has a constitutional right that the Supreme Court of the United States has not

expressly recognized, we will decide the question based on "our own judicial examination of the various cases, statutes, and constitutional principles pertinent thereto." *Bible v. State,* 253 Ind. 373, 378, 254 N.E.2d 319, 320 (1970). Also relevant here are the meaning and scope of Indiana's juvenile waiver-of-rights statute. "A statute's meaning and scope are legal questions we review de novo." *Garner v. Kempf*, 93 N.E.3d 1091, 1094 (Ind. 2018). Our goal is to effectuate the statute's reasonable, commonly understood meaning. *Id.* "If a statute is clear and unambiguous, we apply its words and phrases in their plain, ordinary, and usual sense." *Id.* (citation and internal quotation marks omitted).

# Discussion and Decision

## I. The trial court violated R.R.'s presumed right to be present at a fact-finding hearing by failing to comply with the juvenile waiver-of-rights statute.

### A. We assume without deciding that juveniles are entitled to be present at fact-finding hearings on a delinquency charge.

R.R. claims a constitutional right, under the Due Process Clause, to appear at a fact-finding hearing on his delinquency charge, and the State does not disagree. We decline to decide authoritatively this issue of first impression in Indiana because the State does not contest R.R.'s right to appear on this record, and we prefer to decide such questions after they have been vetted fully in the adversary process. We thus assume without deciding that juveniles are entitled to be present at such hearings. We turn next to whether and how they can waive that right.

## B. A juvenile can waive his right to be present at a fact-finding hearing but must do so according to our juvenile waiver-of-rights statute.

In 1972, we reversed a juvenile's first-degree-murder conviction, finding the juvenile had not waived his Fifth Amendment privilege against self-incrimination and thus the confession undergirding his conviction had been obtained improperly. *Lewis v. State*, 259 Ind. 431, 439-40, 288 N.E.2d 138, 142-43 (1972), superseded by statute as stated in *B.A. v. State*, 100 N.E.3d 225, 234 (Ind. 2018). In that landmark decision, we held that "a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent." *Lewis*, 259 Ind. at 439, 288 N.E.2d at 142. We also held that the child "must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights." *Id.* Only after such a consultation may the child elect to "waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present." *Id.*

The legislature later expanded these waiver protections to **all** constitutional and statutory rights when it enacted the juvenile waiver-of-rights statute in 1978. 1978 Ind. Acts 1232-33 (codified at Ind. Code § 31-6-7-3 (1978 Supp.)). Later recodified, the statute today provides "only" three ways to waive rights that state or federal law confers on children—waiver by counsel; waiver by a parent, guardian, custodian, or guardian ad litem; or waiver by the child himself:

> Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived **only**:
>
> (1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

> (A) that person knowingly and voluntarily waives the right;

> (B) that person has no interest adverse to the child;

> (C) meaningful consultation has occurred between that person and the child; and

> (D) the child knowingly and voluntarily joins with the waiver; or

(3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:

> (A) the child knowingly and voluntarily consents to the waiver; and

> (B) the child has been emancipated under I.C. 31-34-20- 6 or I.C. 31-37-19-27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.

I.C. § 31-32-5-1 (emphasis added).

Unlike adult criminal defendants, who can waive their right to be present by "fail[ing] to appear for trial and fail[ing] to notify the trial court or provide it with an explanation of [their] absence", *Jackson v. State*, 868 N.E.2d 494, 498 (Ind. 2007) (citations omitted), a juvenile's waiver of rights requires a heightened showing. Our analysis begins and ends with the juvenile-waiver statute, which governs "any rights" guaranteed to a juvenile. Neither R.R.'s counsel nor his parent waived his right to be present, so subsections (1) and (2) of the statute do not apply. And R.R.

was not emancipated when the court held the February 2017 fact-finding hearing, so he could not have waived it himself under subsection (3). Thus, under the statute's plain meaning, there was no waiver of R.R.'s right to be present. The trial court violated that right by holding a hearing in his absence.

## II. The absurdity doctrine does not apply here.

In opposing transfer, the State argues that the statute, read literally, "leads to the absurd result that a juvenile could hijack the juvenile justice system and evade responsibility indefinitely by simply refusing to appear for the fact-finding hearing." We recently called the absurdity doctrine "strong medicine" that "defeats even the plain meaning of statutes." *Calvin v. State*, 87 N.E.3d 474, 477 (Ind. 2017) (citations omitted).

For the absurdity doctrine to apply, we require a two-part showing. First, the text must impose an outcome no reasonable person could intend. Second, a court must be able to fix the resulting absurdity by "changing or supplying a word or phrase whose inclusion or omission was obviously a technical or ministerial error". ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 237-38 (2012). The first requirement assures that the result truly is absurd, and not merely unwise or unsound. The second limits courts to repairing obvious errors and not rewriting substantive provisions because the drafter failed to appreciate their unintended effect. Together, these requirements set a very high bar.

When there is a clear drafter's or scrivener's error, we will apply the absurdity doctrine to give the law its obvious intended effect despite its plain text. For example, a statute requiring motorists to carry an "invalid" license or to ensure their vehicles have an "expired" plate would satisfy the doctrine. So, too, would a statute inadvertently omitting the word "not", such as: "Convicted felons shall own or possess a handgun or other firearm." These examples would qualify for the doctrine because the legislature obviously did not intend the enacted text to be interpreted as written. And the judicial fix would be easy: drop the unintended prefix so

that "invalid" becomes "valid"; add the omitted prefix so that "expired" becomes "**un**expired"; insert the omitted word so that "shall own or possess" becomes "shall **not** own or possess".

Unlike these examples, the juvenile-waiver statute neither leads to an obviously unintended result nor lends itself to a clean and modest judicial fix. The statute was intended to protect children, and it is more than possible that the legislature intended the three listed ways for waiving children's rights to be exclusive. But even were we to conclude that no reasonable legislator could have intended that a no-show teenager would avoid waiver by resorting to such litigation gamesmanship, the judicial fix would not be modest. It would require courts to rewrite the statute by adding a substantive "fourth" waiver option the legislature did not enact.

The absurdity doctrine is a slippery slope. Finding absurdity on this record would risk substituting our view of the balance between protecting and waiving juvenile rights for that of the legislature. We decline to do that here. Thus, we read the juvenile-waiver statute to require that waiver occur in one of only three ways the statute lays out expressly. Because the failure to appear is not one of the statutory grounds for finding juvenile waiver, we hold that R.R. did not waive his right to be present at his fact-finding hearing.

Our dissenting colleagues urge the legislature to give trial judges discretion to find waiver where the juvenile does not appear at a scheduled hearing. We do not quarrel with the invitation but observe that the current juvenile-waiver statute ties judges' hands by authorizing a finding of waiver in "only" three circumstances not present here. Even if holding a hearing in R.R.'s absence would make for a "just outcome" here, we "interpret statutes based on their enacted text and not the justness of the outcome" in a singular case. *Garner v. Kempf*, 93 N.E.3d 1091, 1098 (Ind. 2018). For good or ill, the current statute does not permit waiver even when the Constitution would. In that respect, the statute affords juveniles with greater rights than the Constitution requires. Thus, the dissent's conclusion that "holding the hearing in R.R.'s absence comported with due process" is both true and beside the point. We do not conclude that

finding a waiver here would violate due process, only that it would violate the current statute. The legislature can always rewrite the statute to loosen or further tighten the requirements for waiver. We hold only that the current statute does not permit a finding of waiver on this record.

# Conclusion

For these reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Goff, J., concurs.
Rush, C.J., concurs in Parts I.B. and II. and dissents from Part I.A., with separate opinion.
Massa, J., concurs in Part I.A. and dissents from Parts I.B. and II., with separate opinion.
David, J., dissents with separate opinion which Rush, C.J., joins in part, and which Massa, J., joins in part.

ATTORNEY FOR APPELLANT
Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General
Indianapolis, Indiana

Andrew Kobe
Laura R. Anderson
Deputy Attorneys General
Indianapolis, Indiana

**Rush, C.J., concurring in part, dissenting in part.**

I agree with Justice David that the Court should decide—rather than assume without deciding—that R.R. has a constitutional right to be present at the fact-finding hearing. Otherwise, I concur with the majority.

**Massa, J., concurring in part, dissenting in part.**

I agree with Justice Slaughter that the Court may assume without deciding that R.R. has a constitutional right to be present at the fact-finding hearing. Otherwise, I concur with the dissent.

**David, J., dissenting.**

While I appreciate Justice Slaughter's thoughtful majority opinion, I must respectfully dissent. First, as a threshold matter, I would find that R.R. does have a constitutional right to be present at the fact-finding hearing. Second, I believe that despite the juvenile waiver of rights statute, R.R. waived his right to be present at the fact-finding hearing under the facts and circumstances of this case.

As the State observes, the plain language of the statute contemplates that the juvenile will be present to waive or not waive as the case may be, and does not address a situation where the juvenile has run away or disappeared. As the U.S. Supreme court has held: "the applicable due process standard in juvenile proceedings. . .is fundamental fairness." *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S. Ct. 1976, 1985, 29 L. Ed. 2d 647 (1971). Here, I believe the facts that R.R. had presumably run away, there is a pickup order for him, he is close to 18 and has great familiarity with the system make it a just outcome that hearing be held in his absence.

Further, at least one other jurisdiction recognizes a juvenile's right (without an attorney or parent joining the waiver and without emancipation) to waive his or her presence at important proceedings. *See Com. v. B.J.*, 241 S.W.3d 324, 328 (Ky. 2007) (Juvenile, who was brought to family court on allegations that he was a habitual truant, validly waived his right to appear at both his adjudication and disposition hearings; juvenile, at his arraignment, was informed of his future court dates, juvenile's mother made representations to counsel that juvenile was aware of hearing and chose not to attend, and no evidence was presented that juvenile's absence was involuntary).

I urge our legislature to consider amending the statute to give trial court judges some discretion in situations where the juvenile is absent. That is, the statute should allow for knowing, intelligent and voluntary waiver by a juvenile who is aware of upcoming proceedings but chooses to be absent with no adequate explanation. This is not to say that holding a hearing in the juvenile's absence would be best practice or even not

unusual. The best practice would be to issue a pickup order and have the juvenile be present for the proceedings, but in some circumstances, it may be appropriate to hold a hearing in the juvenile's absence in order to prevent juveniles who are aware of an upcoming hearing date to get a free pass by disappearing. Our trial judges should be able to advise a juvenile that if they fail to appear at a hearing, the matter may proceed without them. Then, depending on the age of the juvenile and the circumstances, the trial court should be able to exercise its discretion about whether or not to proceed. In this case, I believe holding the hearing in R.R.'s absence comported with due process. Accordingly, I would affirm the trial court.

Rush, C.J., joins in part and Massa, J., joins in part.