



FILED

Nov 16 2020, 2:02 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-JV-263

## K.C.G.,
*Appellant*,

–v–

## State of Indiana,
*Appellee*.

---

Argued: June 11, 2020 | Decided: November 16, 2020

Appeal from the Marion Superior Court
Nos. 49D09-1811-JD-1368, 49D09-1901-JD-88
The Honorable Marilyn A. Moores, Judge
The Honorable Geoffrey Gaither, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
Case No. 19A-JV-978

---

**Opinion by Justice Slaughter**
Chief Justice Rush and Justices David, Massa, and Goff concur.

**Slaughter, Justice.**

Under Indiana law, only juvenile courts have power to adjudicate a child a delinquent. The delinquency alleged here is that respondent, K.C.G., age 16, committed the offense of dangerous possession of a firearm. We hold that the juvenile court lacked subject-matter jurisdiction. Juvenile courts have "exclusive original jurisdiction" to hear proceedings in which the State alleges that a child committed "an act that would be an offense"—a crime—"if committed by an adult." Yet under the governing statute, an adult can never commit this offense. The statute defines the offense solely in terms of a "child" with an unauthorized firearm. Having previously granted transfer, we vacate K.C.G.'s delinquency adjudication and the modification of his probation based on that adjudication. And we remand with instructions to dismiss the State's petition.

I

In November 2018, K.C.G. stole a car, crashed it, and fled the scene. After police caught him, they searched his person and found marijuana. The State alleged that K.C.G. committed four delinquent acts, and the parties agreed that K.C.G. would admit to two delinquent acts in exchange for the State dismissing the other two. The juvenile court accepted the agreement, placed K.C.G. on probation, and, relevant here, ordered him to attend a day-reporting program, which offers a structured setting for rehabilitating juvenile offenders.

The rehabilitation did not last long. A week into his program, K.C.G. told others at his day-reporting site that he had a gun and a bomb and threatened to use one of them. His probation officer, along with police, went to his home and searched his bedroom. During the search, police found a rifle and arrested K.C.G. The State later filed a delinquency petition alleging he had violated the dangerous-possession-of-a-firearm statute, Ind. Code § 35-47-10-5. After a hearing, the juvenile court adjudicated him a delinquent on this latest charge and modified his probation. The court again placed K.C.G. on probation, this time with a suspended commitment to the department of correction.

K.C.G. appealed and argued two points: first, the plain terms of the dangerous-possession statute showed it could not be a delinquent act; second, the State did not present sufficient evidence of the offense. The court of appeals affirmed the juvenile court. *K.C.G. v. State*, 137 N.E.3d 1044, 1050 (Ind. Ct. App. 2019), trans. granted, 145 N.E.3d 116 (Ind. 2020). It held that the legislature intended the dangerous-possession statute to be the basis of a delinquency adjudication and that the evidence was sufficient to sustain his adjudication. *K.C.G.*, 137 N.E.3d at 1048–50. K.C.G. then sought transfer, which we granted.

II

Juvenile courts, as creatures of statute, can adjudicate only those disputes our legislature has authorized. *D.P. v. State*, 151 N.E.3d 1210, 1213 (Ind. 2020). When the legislature sets out "statutory jurisdictional prerequisites", and those are not met, "the juvenile court has no power to hear and decide the matter." *Id.* Relevant here, juvenile courts have "exclusive original jurisdiction" over proceedings in which a "child"—a person less than 18 years of age—is "alleged to be a delinquent child under IC 31-37." See I.C. §§ 31-9-1-1, 31-9-2-13(d)(1), 31-30-1-1(1). A "delinquent child" is one who commits a "delinquent act" under Chapter 31-37-1, *id*. § 31-37-1-1, defined as an act "that would be an offense if committed by an adult". *Id*. § 31-37-1-2. Thus, for the State to invoke the juvenile court's jurisdiction, it must allege the respondent is a child who committed an act that would be a crime if an adult did it. See *D.P.*, 151 N.E.3d at 1213.

Here, the State filed its petition under Section 31-30-1-1 and incanted Section 31-37-1-2. The petition purports to allege that K.C.G. was a "delinquent child", and that his conduct "would [have been] an offense if committed by an adult", *id.* § 31-37-1-2. The alleged conduct, according to the State, was misdemeanor "dangerous possession of a firearm". Yet the dangerous-possession statute defines the offense in terms of a "child" who "knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in [IC 35-47-10-1]." I.C. § 35-47-10-5(a). This provision is clear and applies only to children; adults cannot

commit dangerous possession of a firearm. Thus, K.C.G.'s alleged possession of a firearm could **never** be an offense committed by an adult, and the State's nominal allegation that K.C.G. is a "delinquent child" because he committed a "delinquent act" failed as a matter of law, meaning the juvenile court lacked jurisdiction.

Perhaps anticipating our "means-what-it-says" interpretive approach, the State points to the second sentence in Subsection 35-47-10-5(a), which provides for an enhancement to a Level 5 felony for a juvenile adjudged delinquent for the dangerous-possession offense: "However, the offense is a Level 5 felony if the child … has been adjudicated a delinquent for an act that would be an offense under this section if committed by an adult." *Id.* According to the State, this provision shows the legislature intended that juveniles can be adjudicated delinquent for violating this statute.

The State's position is not without force, and it has the virtue of reflecting prevailing law as announced by our court of appeals. See, e.g., *C.C. v. State*, 907 N.E.2d 556, 558 (Ind. Ct. App. 2009); *J.S. v. State*, 114 N.E.3d 518, 519 (Ind. Ct. App. 2018) (affirming delinquency adjudication for dangerous possession of a firearm); *J.G. v. State*, 93 N.E.3d 1112, 1125 (Ind. Ct. App. 2018) (same). But we decline to embrace that approach. Rather than crediting the asserted intent behind the criminal statute, I.C. § 35-47-10-5, we give dispositive weight to the plain language of the jurisdictional statute, *id*. § 31-30-1-1. As shown above, the jurisdictional statute establishes that the State must allege the child committed an "act that would be an offense if committed by an adult". *Id*. § 31-37-1-2. Even if the State were correct about legislative intent, we decline to ignore the clear jurisdictional mandate of Section 31-30-1-1 based on an inference from an entirely separate statute.

Our position finds further support from the fact that we have long interpreted criminal statutes strictly against the State, *Suggs v. State*, 51 N.E.3d 1190, 1194 (Ind. 2016), and it is undisputed that the statute at issue here defines a crime with possible penal consequences. True, Section 5(a)'s second sentence shows the legislature likely intended to subject children who possess unauthorized firearms to delinquency adjudications. But the section's first sentence defines the offense solely in terms of a "child", and thus the offense could never be "committed by an adult". I.C. § 31-37-1-2.

When the legislature is imprecise, the State does not get the benefit of the doubt.

Alternatively, the State argues that the juvenile court derived its jurisdiction from another provision—namely, Subsection 31-30-1-1(14). The State says that dangerous possession of a firearm is a "proceeding" under Subsection 31-30-1-1(14), which gives juvenile courts exclusive original jurisdiction to hear "[o]ther proceedings specified by law." Support for this view comes from *C.C.*, 907 N.E.2d 556, in which the court of appeals said that the dangerous-possession statute "fits within this [catch-all] category". *Id.* at 558.

We reject this interpretation for two reasons. First, a statute merely defining a criminal offense is not a "proceeding". Second, a proceeding cannot simultaneously be a "proceeding in which a child . . . is alleged to be a delinquent child" and some "other proceeding specified by law." Compare I.C. § 31-30-1-1(1), with -1(14) (cleaned up). Section 31-30-1-1 lists fourteen types of "proceedings" where a juvenile court has original jurisdiction. By using the modifier "other" to describe "proceedings" under Subsection 1(14), the statute distinguishes those proceedings from proceedings under the first thirteen subsections, including Subsection 1(1). This construction of our statute is neither novel nor at odds with accepted interpretative canons. See A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 69–77, 167–79 (2012) (discussing the ordinary-meaning, whole-text, and surplusage canons, as well as the presumption of consistent usage). If we were to accept the State's proposed interpretation of 1(14), we would have to ignore the plain meaning of "other" and resort to interpretive gymnastics to say why the legislature wrote two subsections conferring jurisdiction over proceedings in which a child is alleged to be delinquent. In other words, if the State were correct, then 1(14) would swallow 1(1) and render it superfluous. Because of these problems, we reject *C.C.*'s characterization of the dangerous-possession statute as some "other proceeding specified by law." I.C. § 31-30-1-1(14) (cleaned up).

Finally, we address the absurdity doctrine—a narrow, limited exception to our interpretive canon that a statute's plain meaning controls. For the absurdity doctrine to apply, we require two showings. First, "the

text must impose an outcome no reasonable person could intend", *R.R. v. State*, 106 N.E.3d 1037, 1042 (Ind. 2018); and, second, a court must be able to fix the resulting absurdity by "changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error". Scalia & Garner, *supra*, at 238; see *R.R.*, 106 N.E.3d at 1042.

We hold that the doctrine fails on the second prong. We could not "fix" the alleged absurdity here merely by changing or supplying a word or phrase. Any judicial fix would require that we expand the dangerous-possession statute's potential class of offenders to include adults with unauthorized firearms. Yet this proposed revision would implicate not only separation of powers by rewriting the legislature's narrow enactment but also perhaps the Second Amendment by treating even protected firearms as potentially off limits to adults, see *McDonald v. Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). Moreover, applying the doctrine here would be qualitatively different from our other applications of it. See, e.g., *Estabrook v. Mazak Corp.*, 140 N.E.3d 830, 835–36 (Ind. 2020) (upholding unchallenged, nearly forty-year-old precedent interpreting "or" as "and"). Thus, we reject the absurdity doctrine on this record and interpret the dangerous-possession statute not to apply to adults.

\*   \*   \*

For these reasons, we hold that the juvenile court lacked subject-matter jurisdiction. The State's petition did not (because, as a matter of law, it could not) allege a jurisdictional prerequisite—that K.C.G.'s conduct was "an act that would be an offense if committed by an adult". We vacate the juvenile court's adjudication of K.C.G. as a delinquent child for dangerously possessing a firearm, as well as its modification of his probation based on that holding. We remand with instructions to dismiss the State's petition.

Rush, C.J., and David, Massa, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Office of the Indiana Attorney General
Indianapolis, Indiana