

FILED

May 13 2020, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Byron D. Harris, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 13, 2020 <br><br> Court of Appeals Case No. 19A-CR-1863 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Michael A. Christofeno, Judge <br><br> Trial Court Cause No. 20C01-1808-F1-10 |

**Tavitas, Judge.**

## Case Summary

[1] Byron Harris, Jr., appeals his conviction and sentence for attempted murder, a Level 1 felony. We reverse and remand.

## Issue

Harris raises one dispositive issue, which we restate as whether Harris' due process rights were violated when his mother was excluded from his trial as part of a witness separation order.[1]

## Facts

Harris was born in January 2003. On June 10, 2018, Trestepfone Pryor was visiting friends at the River Run Apartments in Elkhart. Fifteen-year-old Harris and another man approached Pryor. Harris thought Pryor was a man named "Hershey," and Harris told his friend, "Yeah, I'm gonna shoot him and all that because he robbed me." Tr. Vol. II pp. 180-81. Pryor denied being Hershey and denied robbing Harris. Pryor saw that Harris had a gun "tucked" into his pants. *Id.* at 182.

The next evening, on June 11, 2018, Pryor was standing in the playground of River Run Apartments talking to some people when Harris and several of his friends walked past. Harris was "mugging" Pryor, which means Harris was staring at Pryor or "[l]ooking hard" at Pryor. *Id.* at 185. One of the women Pryor was talking with said to Harris, "Why are you mugging? What's going on?" *Id.* at 214. Harris responded, "Shut the f*** up. This has nothing to do

---

[1] Harris also argues that his thirty-seven-year sentence is inappropriate in light of the nature of the offense and the character of the offender and that the trial court abused its discretion when it declined to sentence Harris under the Alternative Sentencing Statute. Given our resolution of Harris' remaining issue, we need not address his sentence.

with you." *Id.* Harris then "fell on [a] car," drew his gun, and "fired shots" at Pryor. *Id.* at 178, 186. According to Pryor, Harris was wearing a "red hat." *Id.* at 187.

[5] Surveillance video in the apartment complex's parking lot shows four men entering the parking lot from the direction of the playground. One of the men, later identified as Harris, wore what appears to be a black sweatshirt with a red hood. He walked backwards, facing the playground. The man pulled a handgun from his waistband, hid behind a parked vehicle, and fired toward the playground. One of the other men, who was wearing black, also drew a weapon and fired toward the playground. The four men then ran away. Pryor suffered two gunshot wounds to his lower right leg.

[6] The State filed a petition alleging that Harris, a juvenile, committed acts that would be attempted murder if committed by an adult, a Level 1 Felony, and aggravated battery if committed by an adult, a Level 3 felony. In August 2018, after a hearing, the juvenile court waived juvenile jurisdiction over the case to the Elkhart Circuit Court. In its order, the juvenile court noted that: (1) Harris was fifteen years old at the time of the offense; (2) Harris had been involved in the juvenile justice system for six years; (3) Harris had several juvenile delinquency adjudications, including acts that would be armed robbery, dangerous possession of a firearm, theft, pointing a firearm, and possession of marijuana if committed by an adult; (4) Harris had pending charges for acts that would be possession of methamphetamine, resisting law enforcement, and escape if committed by an adult; (5) Harris was "beyond rehabilitation under

the juvenile justice system"; and (6) Harris had received "a plethora of services" from the juvenile justice system, but he had not been placed at the Indiana Department of Correction ("DOC"). Appellant's App. Vol. II p. 20.

[7] The juvenile court noted that Harris' offenses had escalated in violence; he committed the instant offense after running from residential placement; and it was "in the best interest of the safety and welfare of the community" that Harris "stand trial as an adult." *Id.* The State then charged Harris with attempted murder, a Level 1 felony.

[8] At the June 2019 jury trial, Harris was sixteen years old. Before voir dire, the State requested a separation of witnesses order. Harris' mother, Twanna Warren, was listed as a witness in the State's fourth amended witness list. Harris objected and noted that Warren would like to be present at the trial as much as possible because Harris is a juvenile.[2] The trial court overruled Harris' objection. The State, however, never called Warren to testify during the trial. The jury found Harris guilty of attempted murder, a Level 1 felony.

[9] Harris filed a motion for alternative sentencing under Indiana Code Chapter 31-30-4, which the trial court denied. The trial court then sentenced Harris to thirty-seven years in the DOC with five years suspended to probation. Harris now appeals.

---

[2] The presentence investigation report ("PSI") indicates that Harris' parents never married, and Harris was raised by his mother. Harris' father resided in Gary.

# Analysis

Harris argues that the trial court denied him due process when it barred Harris' mother from being present during the trial due to the separation of witnesses order.[3] "'The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action which deprives a person of life, liberty, or property without the 'process' or 'course of law' that is due, that is, a fair proceeding.'" *Gingerich v. State*, 979 N.E.2d 694, 710 (Ind. Ct. App. 2012) (quoting *Pigg v. State*, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010), *trans. denied*), *trans. denied*. "Once it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Id.* "Whether a party was denied due process is a question of law that we review de novo." *Hilligoss v. State*, 45 N.E.3d 1228, 1230 (Ind. Ct. App. 2015); *R.R. v. State*, 106 N.E.3d 1037, 1040 (Ind. 2018) ("Both the existence of constitutional rights and the requirements for waiving them are legal questions we review de novo.").

Harris raises an issue of first impression—whether the parent of a juvenile waived to adult court is subject to a separation of witnesses order. "When determining whether a juvenile has a constitutional right that the Supreme

---

[3] The State argues that Harris' due process claim is waived for failure to raise it at the trial court level. We acknowledge that Harris did not use the words "due process" during his objection at the trial. Harris did, however, specifically object to the exclusion of his parent from the trial as a result of the separation of witnesses order, citing that Harris is a juvenile, which is the basis of the issue he raises on appeal. Accordingly, we will address the issue.

Court of the United States has not expressly recognized, we will decide the question based on 'our own judicial examination of the various cases, statutes, and constitutional principles pertinent thereto.'" *R.R.*, 106 N.E.3d at 1040 (quoting *Bible v. State*, 253 Ind. 373, 378, 254 N.E.2d 319, 320 (1970)).

[12]   In general, a separation of witnesses order is governed by Indiana Evidence Rule 615. "The basic premise of Rule 615 is that, upon request of any party, witnesses should be insulated from the testimony of other witnesses." *Long v. State*, 743 N.E.2d 253, 256 (Ind. 2001). Evidence Rule 615 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; or
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense.

[13]   Under Evidence Rule 615, a trial court is *required* to grant a motion for separation of witnesses. *Hernandez v. State*, 716 N.E.2d 948, 950 (Ind. 1999) (emphasis added). The determination of whether a witness qualifies for a Rule 615 exemption, however, is "within the trial court's discretion and is subject to review for an abuse of that discretion." *Osborne v. State*, 754 N.E.2d 916, 924

(Ind. 2001) (quoting *Long*, 743 N.E.2d at 256). "Rule 615's exemptions should be 'narrowly construed and cautiously granted.'" *Id.*

[14] Under the juvenile code, however, a juvenile's parent is a "part[y] to the proceedings described in the juvenile law and ha[s] all rights of parties provided under the Indiana Rules of Trial Procedure." Ind. Code § 31-37-10-7; *see K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006). As such, the juvenile's parent falls under the Evidence Rule 615(a) exception for a party and cannot be excluded from juvenile proceedings. Accordingly, a juvenile's parent is "a party not covered by the order for a separation of witnesses." *K.S.*, 849 N.E.2d at 542-43. Here, however, because Harris was waived to adult criminal court, the juvenile code granting his parents party status in the juvenile proceeding no longer applied.

[15] Harris' parent did not fall under the exception in Rule 615 for a "party who is a natural person" or the exception for "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Evid. R. 615(a), (b). The only remaining exception is for "a person whose presence a party shows to be essential to presenting the party's claim or defense." Evid. R. 615(c).

[16] In general, "[a] party seeking to exempt a witness from exclusion as 'essential to the presentation of the party's cause' under clause (3) must convince the trial court that the 'witness has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney would not effectively function

without the presence and aid of the witness.'" *Long*, 743 N.E.2d at 256 (quoting *Hernandez*, 716 N.E.2d at 950). *See Long*, 743 N.E.2d at 257 (holding that the trial court did not abuse its discretion by allowing an FBI agent to remain in the courtroom as an "essential" person in a complex investigation); *Hernandez*, 716 N.E.2d at 951 (holding that a prison guard, who was the only person that could assist in the cross-examination of inmates, was an "essential witness" under Rule 615); *R.R. Donnelley & Sons Co. v. N. Texas Steel Co.*, 752 N.E.2d 112, 134 (Ind. Ct. App. 2001) ("This exemption most frequently is employed for expert witnesses, who are believed to be less susceptible to the temptation to shape their testimony."), *trans. denied*. We must determine here whether the parent of a juvenile defendant waived to adult court is "essential" to the juvenile defendant's presentation of his defense.

[17]    Harris argues that a juvenile lacks "maturity to adequately assess the gravity of the proceedings" despite the waiver to adult court. Appellant's Br. p. 14. According to Harris, the waiver to adult court "does not change the Defendant's age or his ability to fully understand the proceedings against him. Nor should it change the requirement or ability to have a parent present during each stage of a proceeding to allow for meaningful consultation when liberty interests are at stake." *Id.*

[18]    The United States Supreme Court has repeatedly recognized a juvenile defendant's special status. *See Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 2455 (2012) (holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's

prohibition on 'cruel and unusual punishments'"); *J.D.B. v. North Carolina*, 564 U.S. 261, 277, 131 S. Ct. 2394, 2406 (2011) (holding "that so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the [*Miranda*] custody analysis is consistent with the objective nature of that test"); *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 2034 (2010) (holding that the Eighth Amendment prohibits the imposition of life without parole sentence on juvenile offenders for non-homicide crimes); *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, (2005) (holding that "[t]he Eighth and Fourteenth Amendments forbid the imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed).

[19]    "The law has historically reflected the same assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." *J.D.B.*, 564 U.S. at 273, 131 S. Ct. at 2403. The Court has recognized that "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." *Roper*, 543 U.S. at 569, 125 S. Ct. at 1195. "[T]he legal disqualifications placed on children as a class—e.g., limitations on their ability to alienate property, enter a binding contract enforceable against them, and marry without parental consent—exhibit the settled understanding that the differentiating characteristics of youth are universal." *J.D.B.*, 564 U.S. at 273,

131 S. Ct. at 2403-04. "'[O]ur history is replete with laws and judicial recognition' that children cannot be viewed simply as miniature adults." *Id.* at 274, 131 S. Ct. at 2404 (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115-16, 102 S. Ct. 869, 877 (1982)). "[C]riminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Miller*, 567 U.S. at 473-74, 132 S. Ct. at 2466.

[20] Indiana courts have held that "[t]he special status accorded juveniles in other areas of the law is fully applicable in the area of criminal procedure." *S.D. v. State*, 937 N.E.2d 425, 429 (Ind. Ct. App. 2010) (citing *Hall v. State*, 264 Ind. 448, 451, 346 N.E.2d 584, 586 (1976)), *trans. denied*. Indiana has recognized that juveniles are entitled to meaningful consultation with their parents. Indiana Code Section 31-32-5-1[4] provides:

> Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:
>
> (1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;
>
> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

---

[4] In a matter of first impression, our Supreme Court recently held that, in a juvenile delinquency proceeding, the juvenile court violated Indiana Code Section 31-32-5-1 by holding a fact-finding hearing in the juvenile's absence where neither the juvenile's counsel nor his parent waived the juvenile's right to be present. *R.R.*, 106 N.E.3d at 1042.

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver; or

(3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:

(A) the child knowingly and voluntarily consents to the waiver; and

(B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.

[21] "The meaningful consultation requirement of the juvenile waiver of rights statute is a safeguard additional to the requirement of adult waivers that they be knowingly, voluntarily, and intelligently made." *S.D.*, 937 N.E.2d at 431 (citing *Cherrone v. State*, 726 N.E.2d 251, 254 (Ind. 2000)). "The purpose of the meaningful consultation requirement is to 'afford the juvenile a stabilizing and comparatively relaxed atmosphere in which to make a serious decision that could affect the rest of his life.'" *Id.* (quoting *Patton v. State*, 588 N.E.2d 494, 496 (Ind. 1992)).

[22]     For example, we held in *D.D.B. v. State*, 691 N.E.2d 486, 487 (Ind. Ct. App. 1998), that, in a juvenile delinquency proceeding, "no meaningful consultation occurred between D.D.B. and the guardian ad litem with regard to the decision to testify. In fact, no conversation occurred at all." Accordingly, we reversed the delinquency determination and remanded for further proceedings.

[23]     Once a juvenile is waived to adult court, Indiana Code Section 31-32-5-1 and its requirement for meaningful consultation no longer apply. Despite the waiver to adult court, however, the juvenile is still a minor child; the juvenile's lack of maturity and need for meaningful consultation with a parent regarding the juvenile's rights remain. Regardless of the waiver to adult court, our criminal procedures should take into account the juvenile's youth and need for such meaningful consultation with a parent, especially during a trial. As such, we conclude that the parent of a juvenile waived to adult court is "a person whose presence a party shows to be essential to presenting the party's claim or defense." Evid. R. 615(c). Accordingly, the trial court erred by excluding Harris' mother from Harris' trial.

[24]     Although we have concluded that the trial court erred by excluding Harris' mother, we must also determine whether that error impacted Harris' substantial rights. Stated differently, and within the context of Harris' alleged due process violation, we are tasked here with determining whether the exclusion of Harris' mother rendered the proceedings unfair. *See* Ind. Trial Rule 61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties

is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

[25] In *Osborne v. State*, 754 N.E.2d 916, 927 (Ind. 2001), Justice Boehm—in a concurrence in which two other justices joined—held that, in reviewing the Evidence Rule 615 exceptions, "the party supporting the erroneous decision [was required] to show that the error was harmless" and the defendant was "entitled to a presumption of prejudice that the State must overcome to prevail." Moreover, we have held: "It is reversible error to extend the separation of witnesses to those who have a substantial interest in the subject matter." *In re Change of Name of Fetkavich*, 855 N.E.2d 751, 756 (Ind. Ct. App. 2006). Accordingly, the State had the burden of overcoming the presumption of prejudice here.

[26] The State makes no harmless error argument. Although the evidence presented at the trial was persuasive, the impact of denying Harris, who was sixteen years old at the time, any opportunity for meaningful consultation with a parent

cannot readily be quantified. We also note that, although the State listed Harris' mother as a witness, she was never called to testify. Under these circumstances, we cannot say that the exclusion of Harris' mother was harmless error.

## Conclusion

[27] In this case of first impression, we conclude that Harris' due process rights were violated when the trial court excluded Harris' mother from the courtroom during the jury trial. We conclude that Harris' mother is "a person whose presence [was] essential to presenting the party's claim or defense" under Indiana Evidence Rule 615(c). The trial court abused its discretion by excluding her pursuant to the separation of witnesses order. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[28] Reversed and remanded.

Najam, J., concurs.

Vaidik, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Byron D. Harris, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
19A-CR-1863

**Vaidik, Judge, dissents.**

I respectfully dissent. The majority holds that the trial court should have exempted Harris's mother from the separation-of-witnesses order for two overlapping reasons: (1) because the parent of a juvenile waived to adult court is "a person whose presence a party shows to be essential to presenting the party's claim or defense" under Evidence Rule 615(c) and (2) because Harris had a due-process right to have his mother present throughout the trial. I see several problems with these conclusions.

[30] First, Harris does not argue on appeal that his mother should have been allowed to stay in the courtroom **because of** Evidence Rule 615(c).  Instead, he argues that he had a right to have his mother in the courtroom **in spite of** Evidence Rule 615.  Therefore, the State had no reason to address—and did not address—Rule 615(c) in its brief.  We should not reverse a judgment based on an issue that was not raised by the appellant, especially when the appellant's silence leads to the appellee's silence.[5]

[31] Second, Harris did not raise **either** the due-process issue **or** the Evidence Rule 615(c) issue in the trial court.  In objecting to the separation-of-witnesses order, he did not mention "due process," the United States Constitution, or the Indiana Constitution, and he did not say anything about Rule 615(c) or argue that his mother's presence was "essential."  In fact, he never even said that he wanted his mother to be present.  He said only that **his mother** "would like to be -- to be in the trial as much as possible."  Tr. Vol. II p. 27.  By failing to raise

---

[5] As the majority acknowledges, to date Evidence Rule 615(c) has been held to apply only where the witness in question "has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney would not effectively function without the presence and aid of the witness." *Long*, 743 N.E.2d at 256.  It may be that the language of Rule 615(c)—"a person whose presence a party shows to be essential to presenting the party's claim or defense"—is broad enough to include a parent of a waived juvenile who is ill-equipped, for one reason or another, to participate meaningfully in their own defense.  But if we are going to extend the provision to that scenario, we should do so only in a case where the issue has been properly raised and fully litigated.  Here it has not been.  With no argument from either party as to the meaning of the provision, this is not a case where we should decide the issue.

either issue in the trial court, Harris waived both issues for purposes of appeal. *See Cole v. State*, 28 N.E.3d 1126, 1135 (Ind. Ct. App. 2015).[6]

[32]　Third, notwithstanding the fact that Harris waived both issues (and doesn't even raise the Evidence Rule 615(c) issue on appeal), I disagree with the majority's blanket conclusions that every waived juvenile has an absolute due-process right to have a parent who is also a witness present throughout trial and that the presence of such a parent is per se "essential" for purposes of Rule 615(c). As the majority notes, a juvenile waived to adult court loses many of the benefits of the juvenile code and becomes subject to adult-court procedures, and in my view, a waived juvenile claiming a due-process right to the presence of a parent or claiming that the presence of the parent is essential under Rule 615(c) should be required to make **some** showing of need. For example, the presence of a parent may be necessary if the waived juvenile, perhaps by reason of immaturity or a developmental disability, is having significant trouble understanding the proceedings or communicating with their attorney and is therefore at risk of an unfair trial. Harris did not even attempt to make such a showing here. Again, he merely pointed out that he is a juvenile (sixteen at the time of trial) and that his mother wanted to be present. To me, those facts are not sufficient to establish a constitutional right to have his mother exempted

---

[6] The majority holds that Harris preserved the due-process issue simply by pointing out that he "is a juvenile." Slip op. ¶10 n.3. I disagree.

from the separation-of-witnesses order or to show that the presence of his mother was "essential" under Rule 615(c).[7]

[33] For these reasons, I would affirm Harris's conviction.[8]

---

[7] I understand the majority's holding to be limited to situations in which a separation-of-witnesses order would leave a waived juvenile with **no** parent in the courtroom. The transcript in this case suggests that Harris's father might have been in the courtroom. *See* Tr. Vol. II p. 28 (Harris's attorney saying that "[Harris's] **parents** would like to be present" (emphasis added)). However, Harris's argument implies that the exclusion of his mother meant that he did not have any parent present, and the State and the majority seem to accept that premise. As such, I read the majority opinion to mean that a separation-of-witnesses order cannot be enforced to the extent that it would leave a waived juvenile without **any** parent present in the courtroom.

[8] I would also reject Harris's arguments that his sentence is inappropriate and that the trial court should have sentenced him under the alternative juvenile sentencing statute, Indiana Code section 31-30-4-2. Harris's actions in this case—firing multiple shots at Pryor with other potential victims nearby—were highly dangerous, and they were preceded by a troubling history of delinquent behavior, including robbery in 2012, theft in 2014, and pointing a firearm and battery in 2017. These facts establish both that Harris's sentence is not inappropriate and that he is not amenable to rehabilitation in the juvenile-justice system.